1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| Michael Paieri,<br><br>        Plaintiff, on behalf of himself and all others similarly situated<br><br>v.<br><br>Western Conference of Teamsters Pension Trust; the Board of Trustees of the Western Conference of Teamsters Pension Trust,<br><br>        Defendants. | No:<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Michael Paieri, by and through undersigned counsel, hereby brings this action under the Employee Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for benefits and to declare his rights under the terms of the Western Conference of Teamsters Pension Trust and to enforce his rights and remedy violations of the Plan and ERISA. On behalf of himself and all others similarly situated, Plaintiff alleges, *inter alia*, that Defendants adopted and imposed retroactively and continue to impose amendments that violate ERISA by purporting to restrict the scope of employment that retired participants may engage in both before and after attainment of normal retirement age; that Defendants violated ERISA rules governing the nonforfeitability of vested benefits; that Defendants violated ERISA's joint and survivor annuity and non-forfeiture rules by failing to joint and survivor benefits including optional forms benefits

CLASS ACTION COMPLAINT - 1

**MARTIN & BONNETT, P.L.L.C**
999 N. NORTHLAKE WAY, SUITE 206B
SEATTLE, WA 98103
Tel. (602) 240-6900 Fax (602) 240-2345

and Benefit Adjustment Option benefits that are actuarially equivalent to the single annuity form of benefits, that  Defendants breached their fiduciary duties and that with respect to Plaintiff, Defendants violated the terms of the Plan, failed to maintain and follow reasonable claims procedures and failed to provide Plan documents that Defendants were required to provide in response to Plaintiff's  written requests.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to section 502(e)(1) of ERISA, 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

2. Venue is proper pursuant to section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391 because the pension plan is administered in the Western District of Washington, and Defendants do business and may be found in this District.

## PARTIES

3. From in or around 1983 to the present, Plaintiff Michael Paieri ("Plaintiff" or "Mr. Paieri") was employed under agreements between his employers and Local 87 of the International Brotherhood of Teamsters ("Teamsters") pursuant to which the employer contributed to the Western Conference of Teamsters Pension Trust ("Plan").

4. Mr. Paieri is a participant under the Plan within the meaning of section 3(7) of ERISA, 29 U.S.C. § 1002(7).

5. Defendant Plan is a defined benefit employee pension benefit plan within the meaning of section 3(2) of ERISA, 29 U.S.C. § 1002(2), and a multiemployer plan within the meaning of section 3(37) of ERISA, 29 U.S.C. § 1002(37) which was established and maintained for the purpose of providing retirement benefits for participants and their beneficiaries, including Plaintiff.

6. Defendant Board of Trustees of the Plan is the Administrator of the Plan and a fiduciary with respect to the Plan within the meaning of ERISA Sections 3(16)(A) and 3(21)(A), 29 U.S.C. §§ 1002(16)(A), (21)(A).

CLASS ACTION COMPLAINT - 2

**GENERAL ALLEGATIONS**

7.      From in or around 1983 through in or around 2004 and again from in or around 2017 through in or around 2019, prior to his retirement, Mr. Paieri worked for J Fletcher Creamer & Son and predecessor companies, including ARB, Incorporated and Maaco (together J Fletcher Creamer & Son, ARB, Incorporated and Maaco are referred to herein as Mr. Paieri's "pre-retirement Employers").

8.      Mr. Paieri's pre-retirement Employers had pension agreements with the Teamsters requiring the employers to make contributions to the Plan on Mr. Paieri's behalf.

9.      As a result of his employment, Mr. Paieri became vested and earned nonforfeitable rights to accrued pension benefits under the Plan.

10.     The Plan provides that participants who are vested, and who have reached their Earliest Retirement Date and have retired from employment or who have reached their Normal Retirement Date, are eligible for an Age Retirement Benefit.

11.     Mr. Paieri retired effective on or about June 1, 2019 when he was 56 years old.

12.     At all relevant times, before and after he retired, Mr. Paieri was and is married to Anzhelika Paieri ("Mrs. Paieri").

13.     Under the Plan, the normal form of Age Retirement Benefit for an unmarried participant is a benefit that the Plan refers to as a "Life Only Pension" which provides monthly payments for the participant's lifetime equal to the amount of his Age Retirement Benefit and that terminates when the participant dies.

14.     Under ERISA, the Plan's Life Only Pension, which provides payment for the life of the participant only is generally referred to as a "single annuity."

15.     ERISA Section 205, 29 U.S.C. § 1055, provides, in relevant part, that benefits for married participants in defined benefit pension plans must be paid in the form of a "qualified joint and survivor annuity" unless the participant's spouse elects to waive the qualified joint and survivor annuity form of benefit and such waiver acknowledges the effect of such election.

CLASS ACTION COMPLAINT - 3

**MARTIN & BONNETT, P.L.L.C**
999 N. NORTHLAKE WAY, SUITE 206B
SEATTLE, WA 98103
Tel. (602) 240-6900 Fax (602) 240-2345

16.     ERISA Section 205, 29 U.S.C. § 1055, defines the qualified joint and survivor annuity as an annuity for the life of the participant with a survivor annuity for the life of the spouse which is not less than 50% of the amount of the annuity which is payable during the joint lives of the participant and spouse.

17.     ERISA Section 205, 29 U.S.C. § 1055, requires that plans that designate as qualified joint and survivor annuities, survivor annuities that are less than 75% of the participant's annuities must also offer a qualified *optional* survivor annuity, which must be at least 75% of the annuity payable during the joint lives of the participant and the spouse.

18.     Under ERISA Section 205, 29 U.S.C. § 1055, both the qualified joint and survivor annuity and the qualified optional survivor annuity must be the actuarial equivalent of the single annuity for the life of the participant.

19.     ERISA Section 205, 29 U.S.C. § 1055, provides that defined benefit plans must pay surviving spouses of vested participants who die before their annuity starting date in the form of a "qualified pretirement survivor annuity."

20.     Under ERISA Section 205, 29 U.S.C. § 1055, the qualified preretirement survivor annuity must be no less than the amounts that would be payable as a qualified joint and survivor annuity under the plan (or the actuarial equivalent thereof ) of the amount that would have been paid to a participant on the day after death for a participant who died after reaching his earliest retirement date or, if the participant who died before the earliest retirement date, the day after he reached his earliest retirement date.

21.     Under ERISA Section 205, 29 U.S.C. § 1055, because the qualified joint and survivor annuity must be actuarially equivalent to the single annuity and because the qualified preretirement annuity cannot be less than the qualified joint and survivor annuity, the qualified preretirement survivor annuity must also be at least the actuarial equivalent of the single annuity that would have been paid to the deceased participant.

22.     A form of benefit is actuarially equivalent to another form of benefit if the

CLASS ACTION COMPLAINT - 4

**MARTIN & BONNETT, P.L.L.C**
999 N. NORTHLAKE WAY, SUITE 206B
SEATTLE, WA 98103
Tel. (602) 240-6900 Fax (602) 240-2345

actuarial present value of the two amounts or benefits is the same (calculated using the same actuarial assumptions).

23.     For a married participant, the Plan provides two surviving spouse forms of pension benefits; a "Regular Employee and Spouse Pension and  an "Optional Employee and Spouse Pension."

24.     Under both the Regular Employee and Spouse Pension and the Optional Employee and Spouse Pension, the participant's monthly benefit is the amount of the "Life Only" pension during the participant's lifetime reduced to account for a survivor benefit that the participant's surviving spouse will receive after the participant's death for the rest of the surviving spouse's life.

25.     The Regular Employee and Spouse Pension consists of the reduced benefit for the participant's life with 2/3 of the amount of the participant's benefit payable to the participant's surviving spouse after the participant's death.

26.     The Optional Employee and Spouse Pension is an optional form of benefit for married participants and consists of the reduced benefit for the participant's life with 3/4 of the amount of the participant's benefit payable to the participant's surviving spouse after the participant's death.

27.     Pursuant to ERISA  Section  205, 29 U.S.C. § 1055,  both the Regular Employee and Spouse Pension and the Optional Employee and Spouse Pension are forms of joint and survivor annuities that must be "the actuarial equivalent of a single annuity for the life of a participant."
If a participant is married at the time of retirement, the Plan provides that the participant's spouse must agree in writing with the participant's pension election.

28.     The Plan uses factors set forth in a table for calculating the reductions in the Life Only Pension  when a participant receives one of the joint and survivor annuity form of benefits.

29.     The Plan does not indicate how those tabular factors were calculated or determined.

30.     If a vested participant dies before his retirement date, the participant's spouse is

CLASS ACTION COMPLAINT - 5

entitled to a "Before Retirement Lifetime Pension," which is calculated utilizing the same factors set forth in the table for calculating the reductions in the Life Only Pension when the participant receives one of the joint and survivor annuity form of benefits.

31.     Although ERISA requires that the Plan's joint and survivor annuity forms of benefits must be actuarially equivalent to the single annuity form of benefit, the Plan's factors result in joint and survivor annuity benefits that are less than the actuarial equivalent of the Life Only Pension when using reasonable mortality and interest assumptions.

32.     Although ERISA requires that the Plan's preretirement survivor annuity must be actuarially equivalent to the single annuity benefit, the Plan's factors for the Before Retirement Lifetime Pension results in preretirement survivor annuities that are less than the actuarial equivalent of the Life Only Pension when using reasonable mortality and interest assumptions.

33.     Participants who are under age 65 at retirement can elect to receive their benefits as a Life Only Pension, Regular Employee and Spouse Pension or Optional Employee and Spouse Pension under an optional form of benefit called a "Benefit Adjustment Option" which provides for increased monthly payments before the participant's "Adjustment Date."

34.     A participant can select an Adjustment Date of either age 62 or 65.

35.     If the participant selects an Adjustment Date of age 65, the participant's "Life Only" pension benefit will be reduced after age 65 by the amount of $240 per month.

36.     If the Participant selects an Adjustment Date of age 62, the participant's "Life Only" benefits will be reduced after age 62 by the amount of $300 per month.

37.     If a Participant has a Regular Employee and Spouse Pension or Optional Employee and Spouse Pension and selects the Plan's Benefit Adjustment Option, the monthly pension benefit will be reduced after the Adjustment Date by the amount of $240 or $300 per month using the same factor used to calculate the conversion of the participant's Life Only Pension to a Regular Employee and Spouse Pension or the Optional Employee and Spouse Pension as the case may be.

38.     If a participant selects the Benefit Adjustment Option, the participant's benefit will

CLASS ACTION COMPLAINT - 6

be increased prior to the Adjustment Date, the amount of which is determined based on the total expected lifetime payments to the participant under the Benefit Adjustment Option so that it is actuarially equivalent in value to the total expected lifetime payments to the Plan under the Employee's chosen form of benefit (i.e., the Life Only Pension, the Regular Employee and Spouse Pension or the Optional Employee and Spouse Pension benefit).

39.     Mr. Paieri retired effective on June 1, 2019.  At the time he retired, the Plan calculated his Life Only Pension as $ 3,991.50 which included a one-time payment to his spouse of 12 times his monthly pension benefit if he died after he retired.

40.     At the time he retired, Mr. Paieri was presented with benefit amounts under the Plan's various pension benefit optional forms.

41.     Based on the amounts presented to him and the high cost of the Plan's joint and survivor annuity options applied as a reduction to his monthly pension benefits, Mr. and Mrs. Paieri declined the Plan's joint and survivor annuity options and Mr. Paieri chose a Life Only Pension with an age 62 Benefit Adjustment Option and decided to obtain a life insurance policy to try to secure Mrs. Paieri's financial future in the event Mr. Paieri were to predecease Mrs. Paieri.

42.     However, Mr. and Mrs. Paieri no longer have that life insurance policy.

43.     If he had been presented with joint and survivor options that were actuarially equivalent to the Life Only Pension, Mr. Paieri may have selected the Regular Employee and Spouse Pension or the Optional Employee and Spouse Pension instead of electing a Life Only Pension and a private life insurance policy that Mr. Paieri no longer has.

44.     The Plan's failure to provide actuarially equivalent spousal benefits constitutes a forfeiture of non-forfeitable benefits.

45.     Prior to May 1994, the Plan provided that retired participants who were under age 65 at retirement would have their pension benefits suspended if they engaged in more than a certain number of hours in "covered employment" following retirement.

46.     "Covered employment" is defined generally by the Plan as employment by a

**MARTIN & BONNETT, P.L.L.C**
999 N. NORTHLAKE WAY, SUITE 206B
SEATTLE, WA 98103
Tel. (602) 240-6900 Fax (602) 240-2345

covered employer for which the employer was required to make payments to the Plan under the terms of a Pension Agreement obligating the employer to contribute to the Plan and comply with the Plan's rules.

47.     In or around May 1994, the Plan was unlawfully amended in violation of ERISA Section 204(g), 29 U.S.C. § 1054(g) in a manner that purported to expand the Plan's suspension of benefits provisions by providing that in addition to prohibiting a return to work in "covered employment," the Plan would also suspend retired participants' pension benefits if they worked more than a certain number of hours per month in any employment with any employer in the same industry, same trade or craft and same geographic area covered by the Plan.

48.     In violation of ERISA Section 204(h), 29 U.S.C. § 1054(h), no advance notice that the 1994 Amendment reduced future benefit accruals was provided to participants.

49.     In accordance with settled law under ERISA, Plan amendments adopted in violation of ERISA Sections 204(g) and (h) never become effective.

50.     Because the 1994 Plan amendment purporting to expand the circumstances under which benefits could be suspended unlawfully reduced accrued benefits and reduced the rate of future benefits accruals in violation of ERISA, the amendment never became effective.

51.     In 2004, the Supreme Court rendered an opinion in *Central Laborers Pension Fund v. Heinz*, 541 U.S. 739 (2004), which held that plan amendments that expanded the scope of post-retirement benefit suspension provisions were unlawful as applied to benefits already accrued.

52.     Despite clear law that the unlawful 1994 Plan amendment never took effect, Defendants unlawfully attempted to retroactively "cure" the invalid 1994 amendment through a 2005 Plan amendment which purported to suspend benefits earned after 1994.

53.     In violation of ERISA, the Plan amendment enacted in 2005 purports to retroactively enable the Plan to suspend benefits under the 1994 amendment by providing that benefits earned after May 1994 could be suspended if a participant worked more than 40 hours per month in any employment in the same industry, same trade or craft and same geographic area

CLASS ACTION COMPLAINT - 8

**MARTIN & BONNETT, P.L.L.C**
999 N. NORTHLAKE WAY, SUITE 206B
SEATTLE, WA 98103
Tel. (602) 240-6900 Fax (602) 240-2345

covered by the Plan.

54.     Defendants failed to give an appropriate ERISA Section 204(h) notice of the reduction in benefit accrual in 2005.

55.     Just as the 1994 Plan amendment was unlawful in all respects, the 2005 Plan amendment which purported to apply retroactively to suspend benefits earned on or after May 1994, reduced accrued and vested benefits and caused a forfeiture of benefits and reduced the rate of future benefit accruals in violation of ERISA Sections 204(g), 204(h) and 203.

56.     In or around December 2009, Defendants entered into a settlement in a case brought against them by a different participant in the United States District Court for the District of Arizona entitled *Becker v. Western Conf. of Teamsters Pension Trust*, Case No. CV 08-02130-PHX-FJM ("*Becker* Settlement").

57.     The *Becker* Settlement provided, *inter alia*, relief for participants who, as of October 31, 2009, had all or a portion of their benefits suspended for returning to work following retirement in non-covered employment.

58.     The *Becker* Settlement did not address, resolve or release the claims of any participants who had their benefits suspended after October 31, 2009 and/or were notified that their benefits would be suspended after October 31, 2009.

59.     At and following Mr. Paieri's retirement from in or around June 2019 to November 2020, Mr. Paieri was working for a company called Astaldi in non-covered employment that the Plan contended violated the Plan's post-1994 amendment suspension of benefits provisions.

60.      During such employment, the Plan suspended the part of Mr. Paieri's benefits that had accrued after December 31, 1994.

61.     Although Mr. Paieri retired effective June 1, 2019, the Plan made its first payment to Mr. Paieri on or about August 23, 2019 and on that date and thereafter paid him less than the full amount of his benefit purportedly because they were paying only 39% of his benefit that the Plan contended was "protected" because it had accrued prior to 1994 and suspending 61% of Mr.

CLASS ACTION COMPLAINT - 9

**MARTIN & BONNETT, P.L.L.C**
999 N. NORTHLAKE WAY, SUITE 206B
SEATTLE, WA 98103
Tel. (602) 240-6900 Fax (602) 240-2345

Paieri's monthly benefits that Defendants stated constituted the non-protected portion of Mr. Paieri's benefits that had accrued after the Plan was unlawfully amended in 1994.

62.     When Defendants suspended 61% of Mr. Paieri's benefit, the suspension included 61% of the part of Mr. Paieri's monthly benefit that constituted the increased in his monthly benefit prior to the Adjustment Date under the Benefit Adjustment Option, which, because of the actuarial increase prior to the Adjustment Date resulted in suspending more than the amount that would have been suspended if Mr. Paieri had elected a Life Only Pension.

63.     Mr. Paieri notified the Plan effective November 5, 2020 that he had been laid off from Astaldi.

64.     The Plan continued to suspend and did not pay Mr. Paieri's full monthly benefit until in or around February 2021 when it paid Mr. Paieri an amount that the Plan told Mr. Paieri over the phone was his full benefit for the months of November 1, 2020 through February 1, 2021.

65.     Although the Plan document provides that upon resuming benefits after a suspension the Plan was required to pay back to Mr. Paieri the part of his benefits that represented the increase in his benefits prior to age 62 under the Benefit Adjustment Option, the Plan failed to pay that amount to Mr. Paieri following resumption of his benefits thereby imposing a forfeiture of a portion of Mr. Paieri's benefits.

66.     Even if the Plan had paid Mr. Paieri the part of his benefits that represented his increase prior to his Adjustment Date under the Benefit Adjustment Option, because the Plan fails to provide for interest on the withheld Benefit Adjustment amount to account for the delay in payment constitutes a forfeiture of a portion of Mr. Paieri's benefits.

67.     By letter dated December 29, 2022, the Plan notified Mr. Paieri that his benefits would again be suspended, this time for noncovered work he was performing as a Public Works Observer II for a company called Public Agency Resources.

68.     By letter dated January 19, 2023, Mr. Paieri requested relevant documents and also requested an extension of time to submit an appeal from the determination that his work constituted

CLASS ACTION COMPLAINT - 10

**MARTIN & BONNETT, P.L.L.C**
999 N. NORTHLAKE WAY, SUITE 206B
SEATTLE, WA 98103
Tel. (602) 240-6900 Fax (602) 240-2345

suspendible employment.

69.     By letter dated February 23, 2023, the Plan provided some but not all of the documents Mr. Paieri requested, granted Mr. Paieri's request for an extension, and advised him that he could submit a written appeal from the denial of his benefits.

70.     Mr. Paieri timely appealed the determination to suspend his benefits.

71.     With his appeal, Mr. Paieri also reiterated his request for Plan documents that he had requested but that were not provided.

72.     By letter dated May 2, 2023, the Plan wrote to Mr. Paieri's attorney and stated that it had "redetermined" the suspension of benefits for Mr. Paieri and had written Mr. Paieri that it had provided "a redetermination letter for Mr. Paieri 's employment as a Public Works Observer II for PAR, explaining that the employment does not qualify as suspendible employment and that his monthly retirement benefit will not be suspended.

73.     The May 2, 2023 letter also stated that Defendants would not proceed with Mr. Paieri's appeal.

74.     Nonetheless, and despite Defendants' notification to Mr. Paieri that it had determined that Mr. Paieri's benefits would not be suspended for Mr. Paieri's work for PAR, Defendants withheld and have failed to pay Mr. Paieri's pension benefits for the month of May 2023.

75.     When Mr. Paieri called to inquire about his May 2023 monthly pension payment, he was told that the reason he was not provided with his May 2023 pension benefit was related to his pending appeal.

76.     Following Mr. Paieri's call to Defendants, his counsel wrote a letter to Defendants dated May 3, 2023 demanding Defendants pay Mr. Paieri his monthly pension payments.

77.     Despite Mr. Paieri's call and his attorney's letter to Defendants, Mr. Paieri still has not received his May 2023 pension payment.

78.     In addition to failing to pay Mr. Paieri's May 2023 pension benefits, Defendants

CLASS ACTION COMPLAINT - 11

only paid Mr. Paieri a portion of his June 2023 monthly pension payment, listing on the remittance report sent to Mr. Paieri that his payment had been subject to both a purported "overpayment recovery" and "partial benefit suspension" despite the Plan's May 23, 2023 letter advising Mr. Paieri that his benefits were not subject to suspension for his non-covered work.

79.     Despite Mr. Paieri's written requests to the Plan Administrator dated January 19, 2023 and February 23, 2023, as of the date of the filing of this Complaint, Defendants still have not provided copies of the following documents that Mr. Paieri requested (other than providing a website link to the current Plan document which is dated January 13, 2020, after Mr. Paieri's 2019 retirement, and the current Summary Plan Description):

   a.   Complete copies of the Plan documents in effect from 2000 to the present;

   b.   Amendments to the Plan documents effective on or after January 1, 2003, including the 2004 and 2020 amendments that are referred to in the Plan's December 29, 2022 letter, and all other amendments to the Plan that concern suspensions of benefits under the Plan during Mr. Paieri's participation in the Plan from 1983 to the present;

   c.   Notices provided to participants, the Department of Labor or the Internal Revenue Service regarding amendments to the Plan document that concern reemployment after retirement and /or the suspension of benefit rules;

   d.   Documents, records, policies, procedures and other information regarding interpretation and application of the Plan's reemployment after retirement and suspension of benefits provisions including documents relevant to how the Plan's "industry", "trade or craft" and "geographical area" have been interpreted and applied; and

   e.   Further, in violation of ERISA and applicable regulations, Defendants refused to provide Mr. Paieri with the collective bargaining agreements and other agreements under which Mr. Paieri worked and had contributions

**MARTIN & BONNETT, P.L.L.C**
999 N. NORTHLAKE WAY, SUITE 206B
SEATTLE, WA 98103
Tel. (602) 240-6900 Fax (602) 240-2345

made to the Plan on his behalf.

80.      Upon information and belief, despite Mr. Paieri's written requests for a complete copy of his benefits file and documents considered, reviewed or generated in connection with Mr. Paieri's claim and appeal, several documents were not provided including, *inter alia*, the foregoing requested documents and records showing payments and amounts withheld for the suspension of Mr. Paieri's benefits.

81.      Upon information and belief, the Plan Administrator has access to copies of the documents Mr. Paieri had requested and the failure to provide such records did not result from matters beyond the control of the Plan Administrator.

82.      Mr. Paieri has fully exhausted all claims for benefits asserted under the terms of the Plan.

## CLASS ALLEGATIONS

83.      In addition to Plaintiff's individual claims for benefits and for violations of ERISA, this action is commenced pursuant to Fed. R. Civ. P. 23 as a class action consisting of the following classes:

Class 1: All Plan participants who were married and had a surviving spouse at the time of their retirement and/or the time of death if prior to retirement together with their surviving spouses, beneficiaries or representatives of their estates

Class 2: All Plan participants who, on or after October 31, 2009 had all or a portion of their benefits suspended for returning to work following retirement in employment that was not "covered employment" as defined under the Plan together with their surviving spouses, beneficiaries or representatives of their estates.

Class 3:   All Plan participants whose retirement benefits included a Benefit Adjustment Option  and who, prior to their Benefit Adjustment Date, had all or a portion of their benefits suspended for returning to work following retirement together with their surviving spouses, beneficiaries or representatives of their

CLASS ACTION COMPLAINT - 13

**MARTIN & BONNETT, P.L.L.C**
999 N. NORTHLAKE WAY, SUITE 206B
SEATTLE, WA 98103
Tel. (602) 240-6900 Fax (602) 240-2345

estates.

84.     Upon information and belief, the classes are so numerous that joinder is impracticable including because of the number of class members and because the members of the classes are geographically dispersed. According to the Plan's latest public Form 5500 Annual Return/Report of Employee Benefit Plan filing, there are more than 226,000 active participants, 185,000 retired participants and 178,000 terminated vested participants entitled to future benefits. According to the Plan's actuary, non-retired participants are assumed to have a probability of marriage of 80% and at least between 10-15% of the Plan participants elect a Benefit Adjustment Option.

85.     There are questions of law and fact common to the members of the classes that will be resolved by common answers, including whether declaratory and injunctive and other equitable relief is appropriate and whether benefits are due as a result of Defendants' violations of the Plan and ERISA including, *inter alia*:

a.   Whether Defendants violated ERISA by failing to calculate and provide options and pay Class 1 members' spousal benefits that were actuarially equivalent to the single  annuity;

b.   Whether Defendants violated ERISA including ERISA Sections 204(g) and (h) in suspending Class 2 members' benefits for working in non-covered employment;

c.   Whether Defendants violated ERISA Sections 203 and 204 by suspending the amount of Class 3 members' benefits that were paid prior to the Benefit Adjustment Date;

d.   Whether Defendants breached their fiduciary duties to class members.

86.     The claims of Mr. Paieri are typical of the class members and Mr. Paieri will fairly and adequately represent the interests of the class members. He has diligently pursued his claims and engaged the undersigned experienced ERISA and class action counsel.

CLASS ACTION COMPLAINT - 14

87.     The prosecution of separate proceedings by the individual members of the classes would create a risk of inconsistent or varying adjudications that would be dispositive of the interests of other members not parties to the litigation or substantially impair or impede their ability to protect their interests.

88.     Upon information and belief, Defendants have acted or refused to act on grounds generally applicable to the classes as a whole by engaging in the same violations of ERISA with respect to the classes, thereby making declaratory relief and corresponding injunctive and equitable relief appropriate with respect to the classes as a whole.

89.     A class proceeding is superior to other available methods for the fair and efficient adjudication of this controversy including, *inter alia*, because:

    a.   the class members have suffered from the same violations of ERISA and the numbers and likely geographic diversity of class members make joinder impractical; and

    b.   the high cost and likely necessity for actuarial experts to assist in the prosecution of the issues involved in this case, along with the relatively modest sums that may be involved for individual participants likely constitute a significant and recurring obstacle to the ability of individual class members to retain competent and experienced ERISA counsel and marshal the resources necessary to prosecute these complex ERISA violations in separate legal proceedings yet likely have caused and will continue in the future to cause loss of valuable pension and ERISA rights unless remedied through injunctive and other appropriate relief.

90.     Questions of law and fact common to the members of the classes predominate over any questions affecting only individual members and a class proceeding is superior to other available methods for the fair and efficient adjudication of this controversy.

**COUNT I**
**(TO REDRESS VIOLATIONS OF ERISA'S JOINT AND SURVIVOR ANNUITY  AND**

CLASS ACTION COMPLAINT - 15

**PRERETIREMENT SURVIVOR ACTUARIAL EQUIVALENCE AND NONFORFEITURE REQUIREMENTS )**

91.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though set fully set forth herein.

92.    ERISA Section 203, 29 U.S.C. § 1053, and regulations thereunder provide minimum vesting standards and set forth the conditions under which a participant's right to benefits under a plan becomes nonforfeitable.

93.    ERISA Section 203(a), 29 U.S.C. § 1053(a), provides in relevant part that:

> Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection.
> (1) A plan satisfies the requirements of this paragraph if an employee's rights in his accrued benefit derived from his own contributions are nonforfeitable.
> (2)(A)(i) In the case of a defined benefit plan, a plan satisfies the requirements of this paragraph if it satisfies the requirements of clause (ii) or (iii).
> (ii) A plan satisfies the requirements of this clause if an employee who has completed at least 5 years of service has a nonforfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions....

94.    By the acts and omissions complained of above, including by improperly calculating the Employee and Spouse Pension, the Optional Employee and Spouse Pension, and Before Retirement Lifetime Pension benefits using unreasonable and inappropriate actuarial equivalence factors, Defendants violated ERISA Sections 205 and 203, 29 U.S.C. §§ 1055 and 1053, and regulations thereunder.

95.    As a proximate result of Defendants' violations of ERISA Sections 205 and 203, Mr. Paieri and Class 1 members have been harmed and, *inter alia*, have been deprived of rights under ERISA including the right to elect actuarially equivalent joint and survivor annuities.

96.    Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), provides that a civil action may be brought by a participant (A) to enjoin any act or practice which violates any provision of Title I of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of Title I of ERISA or the terms of the plan.

**MARTIN & BONNETT, P.L.L.C**
999 N. NORTHLAKE WAY, SUITE 206B
SEATTLE, WA 98103
Tel. (602) 240-6900 Fax (602) 240-2345

97.     As a result of Defendants violations, Plaintiff and Class 1 members are entitled to declaratory, injunctive and other equitable relief pursuant to ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), including, but not limited to, an order, *inter alia*: declaring that Defendants violated ERISA Section 205 and applicable regulations; enjoining Defendants from failing to provide actuarially equivalent Regular Employee and Spouse Pension and the Optional Employee and Spouse Pension benefit options and to recalculate and provide Mr. Paieri and Class 1 members the right to reelect optional forms of benefits, and to pay such redetermined and reelected benefits retroactively to the date of retirement with interest and to immediately make Plaintiff and all Class 1 members whole; surcharging the fiduciaries; reforming the Plan to provide for actuarially equivalent joint and survivor benefits and preretirement survivor annuities; requiring Defendants to disgorge all profits and benefits gained from the wrongful violations of ERISA's vesting requirements; enjoining Defendants to pay vested benefits in accordance with the terms of the Plan as reformed; and providing such other and further relief as the Court deems just and proper, together with pre-judgment interest, attorneys' fees and costs.

## COUNT II
## (TO REDRESS VIOLATIONS OF ERISA'S ACCRUAL OF BENEFITS REQUIREMENT)

98.     Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

99.     Section 204(g) of ERISA, 29 U.S.C. § 1054(g), provides in part:

(g) Decrease of accrued benefits through amendment of plan

(1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) or 1441 of this title.
(2) For purposes of paragraph (1), a plan amendment which has the effect of–
(A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
(B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either

CLASS ACTION COMPLAINT - 17

**MARTIN & BONNETT, P.L.L.C**
999 N. NORTHLAKE WAY, SUITE 206B
SEATTLE, WA 98103
Tel. (602) 240-6900 Fax (602) 240-2345

before or after the amendment) the preamendment conditions for the subsidy.
...

100.   Section 204(h) of ERISA, 29 U.S.C. § 1054(h), as in effect in May 1994 provided in relevant part:

> (h) Notice of Significant Reductions in Benefit Accruals
> (1) A plan described in paragraph (2) may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to—
> (A) each participant in the plan,
> (B) each beneficiary who is an alternate payee (within the meaning of section 1056(d)(3)(K) of this title) under an applicable qualified domestic relations order (within the meaning of section 1056(d)(3)(B)(i) of this title)…

101.   Section 204(h) of ERISA, 29 U.S.C. § 1054(h), as in effect in 2005 provided in relevant part:

> **(h) Notice of significant reduction in benefit accruals**
>
> **(1)** An applicable pension plan may not be amended so as to provide for a significant reduction in the rate of future benefit accrual unless the plan administrator provides the notice described in paragraph (2) to each applicable individual (and to each employee organization representing applicable individuals).
>
> **(2)** The notice required by paragraph (1) shall be written in a manner calculated to be understood by the average plan participant and shall provide sufficient information (as determined in accordance with regulations prescribed by the Secretary of the treasury) to allow applicable individuals to understand the effect of the plan amendment. …
>
> **(3)** Except as provided in regulations prescribed by the Secretary of the Treasury, the notice required by paragraph (1) shall be provided within a reasonable time before the effective date of the plan amendment.
>
> ***
>
> **(6)(A)** In the case of any egregious failure to meet any requirement of this subsection with respect to any plan amendment, the provisions of the applicable pension plan shall be applied as if such plan amendment entitled all applicable individuals to the greater of

CLASS ACTION COMPLAINT - 18

**(i)** the benefits to which they would have been entitled without regard to such amendment, or

**(ii)** the benefits under the plan with regard to such amendment.

**(B)** For purposes of subparagraph (a), there is an egregious failure to meet the requirements of this subsection if such failure is within the control of the plan sponsor and is

**(i)** an intentional failure (including any failure to promptly provide the required notice or information after the plan administrator discovers an unintentional failure to meet the requirements of this subsection),

**(ii)** a failure to provide most of the individuals with most of the information they are entitled to receive under this subsection, or

**(iii)** a failure which is determined to be egregious under regulations prescribed by the Secretary of the Treasury.

\*\*\*

**(8)** For purposes of this subsection

**(A)** The term "applicable individual" means, with respect to any plan amendment--

**(i)** each participant in the plan; and

**(ii)** any beneficiary who is an alternate payee (within the meaning of section 206(d)(3)(K)) under an applicable qualified domestic relations order (within the meaning of section 206(d)(3)(B)(i)),

whose rate of future benefit accrual under the plan may reasonably be expected to be significantly reduced by such plan amendment.

**(B)** The term "applicable pension plan" means--

**(i)** any defined benefit plan; …

**(9)** For purposes of this subsection, a plan amendment which eliminates or reduces any early retirement benefit or retirement-type subsidy (within the meaning of subsection (g)(2)(A)) shall be treated as having the effect of reducing the rate of future benefit accrual.

CLASS ACTION COMPLAINT - 19

102.    In accordance with settled law under ERISA, plan amendments adopted in violation of ERISA Sections 204(g) and (h), 29 U.S.C. § 1054(g) and (h), never become effective.

103.    Because the 1994 Plan amendment purporting to expand the circumstances under which benefits could be suspended unlawfully reduced accrued benefits and reduced the rate of future benefit accruals in violation of ERISA Sections 204(g) and (h), 29 U.S.C. §§ 1054(g) and (h), the 1994 Plan amendment never became effective.

104.    Because the 2005 Plan amendments purporting to retroactively expand the scope of the suspension of benefits provisions unlawfully reduced accrued benefits and reduced the rate for future benefit accruals in violation of ERISA Sections 204(g) and (h), 29 U.S.C. §§ 1054(g) and (h), the 2005 never became effective.

105.    By the acts and omissions complained of above, including, *inter alia,* by amending the Plan to reduce accrued benefits, by failing to give notice of a significant reduction in the rate of future benefit accruals, by failing to disclose Plan amendments and by calculating and paying benefits and determining the right to benefits based on unlawful and/or undisclosed Plan amendments, Defendants violated ERISA, including, *inter alia* ERISA Sections 204(g) and (h), 29 U.S.C. § 1054(g) and (h) and applicable regulations.

106.    Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), provides that:

A civil action may be brought -

(1) by a participant or beneficiary - . . .

***

(B) to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

107.    As a proximate result of Defendants' violations of ERISA, Mr. Paieri and Class 2 members have been harmed and, *inter alia*, have been deprived of rights and accrued benefits due or to become due.

108.    Plaintiff and Class 2 members are entitled to declaratory, injunctive and other

**MARTIN & BONNETT, P.L.L.C**
999 N. NORTHLAKE WAY, SUITE 206B
SEATTLE, WA 98103
Tel. (602) 240-6900 Fax (602) 240-2345

equitable relief, including but not limited to, an order, *inter alia*: declaring that Defendants violated ERISA Section 204, 29 U.S.C. § 1054, and applicable regulations; enjoining Defendants from suspending benefits based on application of the unlawful 1994 Plan amendment and/or 2005 amendment and to immediately make Plaintiff and all Class 2 members whole by restoring all benefits wrongfully withheld; surcharging the fiduciaries; reforming the Plan to eliminate the provisions of the Plan amendments purporting to expand the scope of the suspension of benefits provisions and declaring that such amendments never became effective; requiring Defendants to disgorge all profits and benefits gained from the wrongful suspension of benefits; enjoining Defendants to pay benefits in accordance with the terms of the Plan as reformed; and providing such other and further relief as the Court deems just and proper, together with pre-judgment interest, attorneys' fees and costs.

### COUNT III
### (TO REDRESS VIOLATIONS OF ERISA'S ACTUARIAL EQUIVALENCE AND VESTING REQUIREMENTS)

109.   Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though set fully set forth herein.

110.   ERISA Section  3(24), 29 U.S.C. § 1002(24), defines "accrued benefit" as "the individual's accrued benefit determined under the plan and, except as provided in section 1054(c)(3) of this title, expressed in the form of an annual benefit commencing at normal retirement age ..."

111.   ERISA Section 204(c)(3), 29 U.S.C. § 1054(c)(3), provides in pertinent part: "if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age ... the employee's accrued benefit ... shall be the actuarial equivalent of such benefit ..."

112.   By the acts and omissions complained of above, including by suspending benefits based on the application of the 1994 and/or 2005 Amendments, Defendants violated ERISA Section  203 and regulations thereunder.

**MARTIN & BONNETT, P.L.L.C**
999 N. NORTHLAKE WAY, SUITE 206B
SEATTLE, WA 98103
Tel. (602) 240-6900 Fax (602) 240-2345

113.    By the acts and omissions complained of above, including by suspending Mr. Paieri's benefit increase prior to the Benefit Adjustment Date and by failing to provide to Mr. Paieri and similarly situated Class 3 members retroactive benefits with  interest  to account for the suspension of their Benefit Adjustment Option, Defendants violated ERISA Sections 203 and 204(c)(3), 29 U.S.C. §§ 1053 and 1054, and regulations thereunder.

114.    As a proximate result of Defendants' violations of ERISA Sections 203 and 204, 29 U.S.C. §§ 1053 and 1054 Mr. Paieri and Class 1 and 2 members have been harmed and, *inter alia*, have been deprived of rights under ERISA and vested nonforfeitable benefits.

115.    Plaintiff and Class 2 and 3 members are entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order, *inter alia*: declaring that Defendants violated ERISA Sections 203, 204(c)(3) and applicable regulations; enjoining Defendants from suspending Class 3 members' benefits and failing to pay retroactive benefits with interest under the Benefit Adjustment Option; enjoining Defendants from suspending Plaintiff and Class 2 members' benefits based on application of the unlawful 1994 and/or 2005 Amendments and to immediately make Plaintiff and all class members whole by restoring all benefits wrongfully withheld; surcharging the fiduciaries; reforming the Plan to provide that upon a valid suspension of benefits, the Plan cannot withhold more than the actuarial equivalent of the single annuity if the participant has selected a Benefit Adjustment Option; requiring Defendants to disgorge all profits and benefits gained from the wrongful violations of ERISA's vesting, accrual of benefits  and nonforfeiture requirements; enjoining Defendants to pay vested benefits in accordance with the terms of the Plan as reformed; and providing such other and further relief as the Court deems just and proper, together with pre-judgment interest, attorneys' fees and costs.

**COUNT IV**
**(TO REDRESS VIOLATIONS OF ERISA FIDUCIARY DUTY REQUIREMENTS)**

116.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

117.    ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1) provides in relevant part:

CLASS ACTION COMPLAINT - 22

1
2
3
4
5
6
7
8
9

(1) Subject to Sections 403(c) and (d), 4042, and 4044, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–
(A) for the exclusive purpose of:
(i) providing benefits to participants and their beneficiaries; and
(ii) defraying reasonable expenses of administering the plan;
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
***
(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

10
11
12

118. Defendants have a fiduciary responsibility to administer the Plan in accordance with ERISA and the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

13
14
15
16
17
18
19
20
21
22
23

119. By the acts and omissions complained of above, including, *inter alia*, by failing to provide actuarially equivalent joint and survivor optional forms of benefits, by failing to give advance notice to participants that the Plan was amended to expand the scope of the suspension of benefits provisions, by applying suspension of benefits amendments to retroactively decrease accrued vested benefits, by suspending and failing to pay interest on the increased benefits prior to the Benefit Adjustment Date for participants who have a Benefit Adjustment option, by depriving Plaintiff and class members of rights protected by ERISA and the terms of the Plan, by failing to administer the claims procedures of the Plan in accordance with ERISA requirements, by failing to administer the Plan in accordance with its terms, and by failing to provide Plaintiff with documents and instruments required to be provided to Plan participants, Defendants breached their fiduciary duties to Plaintiff and class members.

24
25
26

120. As a proximate result of Defendants' breaches of fiduciary duty, Plaintiff and class members have been harmed and, *inter alia*, have been deprived of rights protected by the terms of the Plan and ERISA.

27
28

CLASS ACTION COMPLAINT - 23

**MARTIN & BONNETT, P.L.L.C**
999 N. NORTHLAKE WAY, SUITE 206B
SEATTLE, WA 98103
Tel. (602) 240-6900 Fax (602) 240-2345

121.     Plaintiff and class members are entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order, *inter alia*: declaring that Defendants breached their fiduciary duties and violated ERISA Section 404 and applicable regulations; enjoining Defendants from failing to pay actuarially equivalent joint and survivor and preretirement survivor annuities; enjoining Defendants from applying the unlawful 1994 and 2005 Plan Amendments purporting to expand the scope of the suspension of benefits rules; enjoining Defendants from suspending the increased benefit prior to the Benefit Adjustment Date under the  Benefit Adjustment Option benefits; surcharging the fiduciaries; reforming the Plan, *inter alia*, to eliminate Plan provisions that purported to expand the suspension of benefits provisions and declaring that such amendments never became effective, to eliminate suspension of the Benefit Adjustment amounts prior to the Benefit Adjustment Age, and to provide for actuarially equivalent joint and survivor annuities; and enjoining Defendants to immediately make Plaintiff and all class members whole by restoring benefits in accordance with the terms of the Plan as reformed; requiring Defendants to disgorge all profits and benefits gained from their breaches of fiduciary duty; and such other and further relief as the Court deems just and proper, together with pre-judgment interest, attorneys' fees and costs.

## COUNT V
### (INDIVIDUAL COUNT TO REDRESS VIOLATIONS OF THE TERMS OF THE PLAN PURSUANT TO ERISA SECTION 502(a)(1)(B))

122.     Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

123.     By the acts and omissions set forth above, including, *inter alia*, by failing to pay Mr. Paieri benefits that the Plan had granted, Defendants violated the terms of the Plan.

124.     As a proximate result of Defendants' violations of the terms of the Plan, Plaintiff was harmed and deprived of benefits due under the terms of the Plan.

125.     Pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), as a result of Defendants' violations of the terms of the Plan, Plaintiff is entitled to an order declaring that

CLASS ACTION COMPLAINT - 24

Defendants violated the terms of the Plan, enjoining Defendants from violating the terms of the Plan and directing Defendants to pay Plaintiff his full monthly benefits with interest retroactively to May 1, 2023, together with prejudgment interest, attorneys' fees and costs.

## COUNT VI
### (INDIVIDUAL COUNT TO REDRESS VIOLATIONS OF ERISA'S REQUIREMENTS TO DISCLOSE PLAN DOCUMENTS UPON WRITTEN REQUEST)

126.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

127.    Section 104(b)(4) of ERISA, 29 U.S.C. 1024(b)(4), provides in pertinent part:
The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, and terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

128.    Section 502(c)(1)(B) of ERISA, 29 U.S.C. § 1132(c)(1)(B), provides in pertinent part:

Any administrator. . .(B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may, in the court's discretion, be personally liable to such participant or beneficiary in the amount of up to [$100] a day from the date of such failure or refusal and the court may in its discretion order such other relief as it deems proper… For purposes of this paragraph, . . .each violation described in subparagraph (B) with respect to a single participant or beneficiary, shall be treated as a separate violation.

129.    Pursuant to the Debt Collection Improvement Act of 1996 (62 Fed. Reg. 40696) the $100 limit referred to in section 502(c) of ERISA was increased to $110. 29 C.F.R. § 2575.502(c)(1) therefore states in pertinent part that: "The maximum amount of the civil monetary penalty established by section 502(c)(1)(c)...ERISA [has been] increased from $100 a day to $110 a day."

130.    As set forth above, despite Mr. Paieri's multiple written requests and Defendants' legal obligation to furnish documents, including Plan amendments and the collective bargaining

CLASS ACTION COMPLAINT - 25

agreements under which the Plan is established and maintained, Defendant Plan Administrator failed to produce copies of the plan documents to which Mr. Paieri is entitled under ERISA Section 104, 29 U.S.C. § 1024 and regulations thereunder.

131.    As a result of Defendants' acts and omissions set forth above, Mr. Paieri has been harmed and his right to benefits and to pursue his claims for benefits was chilled, delayed and thwarted.

132.    Pursuant to ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), Defendant Plan Administrator should be enjoined to timely furnish the requested Plan documents and amendments and other documents requested by Plaintiff and pursuant to ERISA Section 502(c)(1)(B), should be assessed a penalty of $110 per day for each separate violation for every day following 30 days after each of Plaintiff's multiple written requests for Plan documents that Defendant Plan Administrator failed to produce through the date the requested documents are furnished to Mr. Paieri, together with costs and attorneys' fees.

## COUNT VI
### (INDIVIDUAL COUNT TO REDRESS VIOLATIONS OF ERISA'S CLAIMS PROCEDURE REQUIREMENTS)

133.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

134.    Section 503 of ERISA, 29 U.S.C. §1133 provides in relevant part:

In accordance with regulations of the Secretary, every employee benefit plan shall--

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

135.    ERISA Section 503, 29 U.S.C. § 1133, and regulations thereunder, 29 C.F.R. § 2560.503-1, provide that plan administrators, *inter alia*, must provide claimants whose claims for benefits are denied with the specific reasons for the claim denial, must provide claimants with

**MARTIN & BONNETT, P.L.L.C**
999 N. NORTHLAKE WAY, SUITE 206B
SEATTLE, WA 98103
Tel. (602) 240-6900 Fax (602) 240-2345

documents and information showing that plan provisions have been applied consistently with respect to similarly situated claimants, must have administrative procedures and safeguards designed to ensure that benefit determinations are made in accordance with governing plan documents and that plan provisions have been applied consistently with respect to similarly situated claimants, must provide claimants with the plan provisions relied upon, and must provide a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary.

136.    By the acts and omissions set forth above, including, but not limited to, failing to provide documents and information about the suspension of benefits and Plan amendments and failing to pay Plaintiff despite purportedly granting his claims, Defendants violated ERISA's claims procedure requirements.

137.    As a result of Defendants' acts and omissions set forth above, Plaintiff has been harmed and his rights to benefits and to pursue his claims were chilled, delayed and thwarted.

138.    Plaintiff is entitled to appropriate declaratory, injunctive and equitable relief, including an order enjoining Defendants to provide a reasonable claims process and to follow ERISA's claims procedure requirements, requiring Defendants to provide appropriate make-whole relief, surcharging the Trustees and ordering Defendants to disgorge and remedying Defendants' unjust enrichment.

WHEREFORE, Plaintiff requests that Judgment be entered in his favor and on behalf of the classes against Defendants as follows:

A.    Declaring that Defendants violated ERISA Sections 203, 204, 205, 404, 503 and regulations thereunder;

B.    Declaring that Defendants violated the terms of the Plan;

C.    Enjoining Defendants from violating ERISA sections 102, 104, 203, 204, 206, 402, 404, 503 and regulations thereunder and enjoining application of amendments retroactively reducing accrued benefits;

CLASS ACTION COMPLAINT - 27

D. Enjoining Defendants to recalculate Plaintiff's and class members' retirement benefits and restore the benefits that were reduced and withheld and to make Plaintiff and class members whole for all losses, including pre-judgment and post-judgment interest;

E. Enjoining Defendants to provide actuarially equivalent joint and survivor annuity forms of benefit and new rights and options of election to all Class 1 members;

F. Ordering reformation of the Plan, *inter alia*, to eliminate the provisions of challenged amendments expanding the scope of the suspension of benefits provisions, to eliminate the Plan's suspension of the pre-Benefit Adjustment Age amount under the Plan's Benefit Adjustment Option, to provide for actuarially equivalent joint and survivor annuities, and enjoining Defendants to pay benefits in accordance with the terms of the Plan as reformed;

G. Enjoining Defendants from violating the terms of the Plan and ordering Defendants to pay Plaintiff's benefits with interest and other make-whole relief;

H. Ordering Defendants to disgorge the value of the benefits unjustly withheld from Plaintiff and class members together with all profits attributable thereto;

I. surcharging the Plan Administrator for the full amount of Plaintiff's and class members' withheld benefits and such other amounts to make Plaintiff and class members whole;

J. Awarding Plaintiff $110 a day for each separate violation of Defendants' requirement to provide Plan documents;

K. Awarding attorneys' fees and costs pursuant to ERISA section 502(g), 29 U.S.C. § 1132(g) and/or the common fund theory, and

L. Awarding such other and further relief the Court deems just and proper.

CLASS ACTION COMPLAINT - 28

**MARTIN & BONNETT, P.L.L.C**
999 N. NORTHLAKE WAY, SUITE 206B
SEATTLE, WA 98103
Tel. (602) 240-6900 Fax (602) 240-2345

1
2
3      **DATED** this 19th day of June 2023.
4                                      **MARTIN & BONNETT, P.L.L.C.**
5                                      _/s/Michael M. Licata_
6                                      Michael M. Licata
                                       999 N. NORTHLAKE WAY, SUITE 206B
7                                      SEATTLE, WA 98103
8                                      _Attorneys for Plaintiff and proposed classes_
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT - 29                    **MARTIN & BONNETT, P.L.L.C**
                                               999 N. NORTHLAKE WAY, SUITE 206B
                                               SEATTLE, WA 98103
                                               Tel. (602) 240-6900 Fax (602) 240-2345