1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

MICHAEL PAIERI,

               Plaintiff,

     v.

WESTERN CONFERENCE OF
TEAMSTERS PENSION TRUST et al.,

            Defendants.

CASE NO. 2:23-cv-00922-LK

ORDER DENYING MOTION FOR
A PROTECTIVE ORDER

17

      This matter comes before the Court on Defendants' motion for a protective order staying

18

discovery until they have answered Plaintiff Michael Paieri's operative complaint. Dkt. No. 37 at

3. For the reasons set forth below, the Court denies the motion.[1]

19

## I.  BACKGROUND

20

      From 1983 through at least 2019, Paieri was employed under agreements between his

21

employers and various local chapters of the International Brotherhood of Teamsters requiring his

22

23

24

---

[1] Because the matter can be decided based on the parties' filings, the Court denies Defendants' request for oral argument. Dkt. No. 37 at 1.

ORDER DENYING MOTION FOR A PROTECTIVE ORDER - 1

employers to contribute to the Western Conference of Teamsters Pension Trust (the "Plan"). Dkt. No. 36 at 2–3 (alleging that Paieri was employed from "1983 to the present" but also that he was employed until his retirement in 2019). The purpose of the Plan was to provide retirement benefits for participants and their beneficiaries. *Id.* at 3. Defendant Board of Trustees of the Western Conference of Teamsters Pension Trust (the "Board") is the Administrator of the Plan. *Id.*

Paieri was a Plan participant who retired in 2019 when he was 56 years old. *Id.* at 2–3. Participants who, like Paieri, retire before age 65 may elect one of several benefit options. *Id.* at 3, 7–8. Paieri and his spouse declined the Plan's joint and survivor annuity options and chose a Life Only Pension with an age 62 Benefit Adjustment Option ("BAO"). *Id.* at 9. He now contends that if the Plan had provided him with the required information, he may have selected one of the other options. *Id.*

Another issue arose: when Paieri worked two post-retirement stints in what Defendants considered to be "non-covered employment," Defendants suspended the part of his retirement benefits that had accrued after December 31, 1994. *Id.* at 11–13. Paieri appealed and the Plan paid some of the withheld benefits but did not pay Paieri "the full amount withheld that was attributable to the [BAO]" or his May 2023 pension payment. *Id.* at 12–14.

In 2023, Paieri filed his class action complaint, followed by his first amended class action complaint, asserting claims under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA") against the Plan and the Board. Dkt. Nos. 1, 36. Paieri alleges that, among other things, Defendants breached their fiduciary duties by wrongfully implementing retroactive Plan amendments purporting to restrict the type of employment participants could perform after their retirement, suspending retirees' benefits, "misrepresenting and failing to disclose material information governing the calculation of benefits," applying unreasonable assumptions that resulted in lower benefits payments, and failing to comply with legally required

disclosures and notices. Dkt. No. 36 at 1–2, 7–12. Paieri also contends that the Plan failed to provide "requested documents and records showing payments and amounts withheld for the suspension of [his] benefits." *Id.* at 14–15; *see also id.* at 8–9. In addition, he avers that Defendants failed "to provide actuarially equivalent joint and survivor annuities and preretirement survivor annuities and . . . fail[ed] to fully disclose the relative value of those forms of benefits thereby preventing participants from electing the more valuable form of benefit." *Id.* at 9.

In September 2023, Paieri voluntarily dismissed two of his claims, Dkt. No. 28, and Defendants filed a motion to dismiss, Dkt. No. 30. Paieri then filed his first amended complaint. Dkt. No. 36.[2] As summarized by Defendants, that pleading contains four counts on behalf of the putative classes:

> **Count I**: Count I alleges the Plan's qualified joint and survivor annuity ("QJSA"), qualified optional survivor annuity ("QOSA") and qualified preretirement survivor annuity ("QPSA") forms of benefit violated ERISA §§ 203 and 205, because they were not actuarially equivalent to the Plan's single life annuity ("SLA"). . . .

> **Count II**: Count II alleges that 1994 and 2005 Plan amendments unlawfully reduced benefits in violation of ERISA §[] 204(g) and (h). . . .

> **Count III**: Count III challenges the suspension of Plaintiff's benefit increase before his chosen . . . []BAO[] adjustment date, and the alleged failure of the Plan to provide him with retroactive benefits with interest to account for the suspension of the BAO portion of his benefit. . . .

> **Count IV**: Count IV is derivative of Counts I through III, alleging that Defendants breached their fiduciary duties by failing to provide benefit options that are actuarially equivalent to the Plan's SLA; by applying the 1994 and 2005 Plan amendments; and by suspending and failing to pay interest on participants' BAO increases.

Dkt. No. 37 at 8–9; *see* Dkt. No. 36 at 18–27. Paieri purports to represent three putative classes of participants in the Plan:

> Class 1: All Plan participants who were married and had a surviving spouse at the time of their retirement and/or the time of death if prior to retirement together with

---

[2] The amended complaint noted Paieri's previous withdrawal of counts V and VII. *Id.* at 27–28.

their surviving spouses, beneficiaries or representatives of their estates.

Class 2: All Plan participants who, on or after October 31, 2009 had all or a portion of their benefits suspended for working at or following retirement in employment that was not "covered employment" as defined under the Plan together with their surviving spouses, beneficiaries or representatives of their estates.

Class 3: All Plan participants whose retirement benefits included a Benefit Adjustment Option and who, prior to their Benefit Adjustment Date, had all or a portion of their benefits suspended for working at or following retirement together with their surviving spouses, beneficiaries or representatives of their estates.

Dkt. No. 36 at 15–16 (footnote omitted); *see also id.* at 16–17 (listing allegedly common issues of law and fact). Paieri also advanced a fifth claim on behalf of only himself, alleging that Defendants violated ERISA by failing to provide documents he requested. *Id.* at 27–28.

Defendants moved to dismiss all of Paieri's claims on behalf of the putative classes. Dkt. No. 44 at 3 (noted for January 12, 2024). They contend that because Paieri selected the SLA form of benefit, he has no standing to challenge the other benefit types in count I. Dkt. No. 37 at 9–10. They further contend that count I fails to state a claim, and that counts I through IV are time-barred. *Id.* at 10. Defendants also filed a motion to bifurcate this case into liability and damages phases. Dkt. No. 43 at 3 (noted for December 8, 2023). Briefing is not yet complete on the motion to dismiss.[3]

Meanwhile, on October 2, 2023, Paieri served his First Set of Requests for Production (the "RFPs"). Dkt. No. 38 at 2, 4–16. The RFPs include 40 requests seeking information from 1983 to the present, including putative class 1 members' benefit election and spousal consent forms; documents provided to or received from putative class 2 or class 3 members pertaining to the suspension of their benefits for working after their retirements; claims, appeals and demands made

---

[3] In their reply brief, Defendants requested that the Court consider this motion together with its pending Motion to Bifurcate Liability and Damages. Dkt. No. 51 at 3 n.1 (citing Dkt. No. 43). The Court declines to entertain that request because Paieri had no opportunity to respond to it, and regardless, the Court finds it more efficient to address the stay now.

by putative class 1, 2, or 3 members regarding the calculation of and rights to elect survivor annuities or suspension of benefits for post-retirement work; and all documents provided to or received from Plan actuaries and consultants pertaining to the Plan's actuarial experience with respect to joint and survivor, preretirement survivor benefits, and benefit adjustment options. Dkt. No. 37 at 6–7; Dkt. No. 38 at 4–16.

## II.   DISCUSSION

The Court has jurisdiction over this matter pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331. Because Paieri disputes whether the parties met and conferred before Defendants filed this motion, the Court addresses that issue first.

### A.   The Parties Met and Conferred About a Discovery Stay

A party seeking a protective order must include with their motion "a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1); *see also* LCR 26(c)(1). "A good faith effort to confer requires a face-to-face meeting or a telephone conference." LCR 26(c)(1).

Defendants' motion includes the following certification: "The undersigned counsel hereby certifies that Defendants engaged in a good faith meet and confer conference with other affected parties in an effort to resolve the dispute without court action. The conference took place during the parties' Rule 26(f) conference on August 4, 2023." Dkt. No. 37 at 3. During that conference, Defendants proposed a blanket discovery stay and Paieri did not agree. Dkt. No. 51 at 3. According to Defendants, Paieri "stated his intention to seek a wide range of participant-level discovery relating to putative class members in the form of requests for production, interrogatories, requests for admission and depositions," but had not yet served discovery requests when the parties held their August 4, 2023 conference. *Id.*

Paieri contends that Defendants' motion should be denied for failure to meet and confer because the parties did not discuss Paieri's specific discovery requests. Dkt. No. 49 at 3. He notes that Defendants argue that the RFPs are "intrusive and overbroad" and responding to them "will be extremely time consuming," but the parties never met and conferred regarding any of the RFPs. *Id.* at 5 (quoting Dkt. No. 37 at 4–5). However, the thrust of Defendants' motion is that discovery should be stayed entirely. Dkt. No. 37 at 3. Paieri agrees that the parties met and conferred regarding that issue. Dkt. No. 50 at 1–2. Indeed, the parties briefed this issue in detail in their Joint Status Report. Dkt. No. 26 at 5, 12–15, 17, 22. Defendants' request for a stay is thus ripe for the Court's consideration.

## B.   A Blanket Discovery Stay Is Unwarranted

### 1.   <u>Legal Standards</u>

Each party is entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The Federal Rules of Civil Procedure "do not provide an automatic stay of discovery if a motion to dismiss is filed: such motions are often unsuccessful and a stay could cause unnecessary and significant delays at the outset of the litigation." *Neal v. City of Bainbridge Island*, No. C20-6025-RSL, 2021 WL 2105301, at *1 (W.D. Wash. May 25, 2021); *United States v. Bayley*, No. 3:20-CV-05867-DGE, 2022 WL 1289664, at *2 (W.D. Wash. Apr. 29, 2022) ("The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." (cleaned up)). "Although a court may relieve a party from the burdens of discovery while a dispositive motion is pending, this is the exception and not the rule." *White v. Skagit Bonded Collectors, LLC*, No. 2:21-CV-00697-LK, 2022 WL 508825, at *1 (W.D. Wash. Jan. 24, 2022). Still, the Court "has discretion to stay discovery if defendant shows that it is entitled to a protective order under Rule 26(c) 'to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense[.]'" *Neal*, 2021 WL 2105301, at *1 (quoting Fed. R. Civ. P. 26(c)(1)). The moving party must demonstrate good cause for a discovery stay. *See, e.g.*, *Gould v. Allstate Vehicle & Prop. Ins. Co.*, No. 2:22-cv-00820-LK, 2023 WL 3018865, at *7 (W.D. Wash. Apr. 20, 2023).

Courts typically consider two factors in evaluating good cause to issue a stay: "First, the pending motion must be potentially dispositive of the entire case, or at least on the issue to which discovery is directed. Second, the court must determine if the pending dispositive motion can be decided without additional discovery." *Ahern Rentals Inc. v. Mendenhall*, C20-0542-JCC, 2020 WL 8678084, at *1 (W.D. Wash. July 9, 2020); *Wilmington Tr. Co. v. Boeing Co.*, No. C20-0402-RSM-MAT, 2020 WL 6060434, at *2 (W.D. Wash. Oct. 14, 2020). Assessment of these factors entails a "preliminary peek" at the pending motion to dismiss. *Travelers Prop. Cas. Co. of Am. v. H.D. Fowler Co.*, C19-1050-JCC, 2020 WL 832888 at *1 (W.D. Wash. Feb. 20, 2020) (quoting *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 603 (D. Nev. 2011)). "The 'preliminary peek,' however, is not intended to prejudge the outcome of the motion." *Zeiger v. Hotel Cal. by the Sea LLC*, No. C21-1702-TL-SKV, 2022 WL 1499670, at *2 (W.D. Wash. May 12, 2022).

2.  A Stay Is Not Warranted Here

Defendants contend that good cause exists to stay discovery because if their motion to dismiss is granted, Paieri's "voluminous discovery requests" will be moot. Dkt. No. 37 at 12. Thus, they argue, a stay is warranted "to protect Defendants from oppression, or undue burden and expense" for the following reasons:

> (1) Plaintiff's pending discovery requests are intrusive and overbroad, as they seek personal information relating to hundreds of thousands of Plan participants dating back to 1983; (2) the need for such discovery is likely to be eliminated or at least significantly curtailed by the Court's ruling on Defendants' forthcoming motion to dismiss; (3) a temporary stay of discovery will not prejudice Plaintiff; and (4) a stay will serve the interests of judicial economy and preserve resources.

1   *Id.* at 3. With respect to Plaintiffs' discovery requests, Defendants aver that many of the RFPs

2   "seek sensitive personal information relating to over 465,000 Plan participants dating back to

3   1983," and responding would "call for the production of at least 28 million pages of documents."

4   *Id.* at 4 (emphasis omitted).[4] Defendants note that participant files are stored in two separate

5   locations. First, files from 1983 "to the mid-1990s" are stored in AppXtender, which "contains

6   non-searchable images of the microfilm reel on which participant files were previously stored."

7   Dkt. No. 39 at 2. AppXtender does not have the functionality "to pinpoint a particular participant

8   file on a given microfilm reel," and those files must be manually accessed and reviewed. *Id.*

9   Second, files from the mid-1990s to the present are stored on ImageViewer, which allows a user

10  to locate a specific participant's file but "does not allow mass electronic downloading or searching

11  of participant files." *Id.* Defendants estimate that searching for and collecting the documents the

12  RFPs seek would be labor intensive and "would likely take hundreds of thousands of hours" for

13  NWA to complete. *Id.* at 6–9. Defendants also aver that those hours "would impact the resources

14  available to carry out the daily administrative operations of the Plan." *Id.* at 9. Defendants do not

15  address whether any of these purported burdens could be lessened by technology-assisted review

16  and/or other discovery tools geared towards eliminating or reducing the need for manual review.

17  *generally* The Sedona Conference, *TAR Case Law Primer, Second Edition*, 24 Sedona Conf. J. 1

18  (2023); The Sedona Conference, *The Sedona Principles, Third Edition: Best Practices,*

19  *Recommendations & Principles for Addressing Electronic Document Production A Project of the*

20  *Sedona Conference Working Group on Electronic Document Retention and Production (WG1)*, 19

21  Sedona Conf. J. 1, 164 (2018) ("Using a manual process to find relevant ESI may be infeasible or

22

23  ---
    [4] *See also* Dkt. No. 36 at 16 (alleging that there are more than 226,000 active participants in the Plan, 185,000 retired
    participants, and 178,000 terminated vested participants entitled to future benefits). The Plan's third-party

24  administrator, Northwest Administrators, Inc. ("NWA"), estimates that there are between 465,000 and 550,000
    participants in putative class 1, 1,260 participants in class 2, and 10,865 in class 3. Dkt. No. 37 at 8.

unwarranted in cases with complex data systems or large volumes of ESI. Using search methods—based on a combination of technology and process to help search for, preserve, retrieve, and produce relevant ESI—can result in cost and time savings, and should be viewed as reasonable, valuable, and often a practical necessity.").

Paieri responds that Defendants have not met their "heavy burden" to show that discovery should be denied. Dkt. No. 49 at 6 (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). Paieri argues that Defendants' motion to dismiss lacks merit, and he will be prejudiced if a stay is granted because the Court "imposed an ambitious schedule" including an April 16, 2024 expert disclosure deadline. *Id.* at 14–15 ("Plaintiff simply cannot meet that schedule if Defendants' Motion is granted."); Dkt. No. 29 (case scheduling order). Defendants respond that the Court set that "ambitious schedule" at Paieri's request, which he made knowing that Defendants sought a discovery stay. Dkt. No. 51 at 3; Dkt. No. 26 at 12, 21, 23 (Paieri proposing a discovery deadline of June 14, 2024 and a trial date of November 11, 2024). Regardless of how the parties got here, it appears unlikely that they would be able to meet the existing case deadlines if discovery is stayed until after consideration of Defendants' motion to dismiss. Although the Court has broad discretion to modify the case schedule and extend the deadlines if warranted, such extensions are not a given. *See Hunt v. Cnty. of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) ("District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'" (quoting *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 833 (9th Cir. 2011))); Fed. R. Civ. P. 16(b)(4).

Moreover, the motion to dismiss, even if granted, will not resolve the whole case because Defendants do not seek to dismiss all claims. *See* Dkt. No. 36 at 27–28 (count VI alleging an individual claim for failure to disclose documents upon written request); Dkt. No. 44 at 3 (moving to dismiss counts I–IV). Yet Defendants do not request a stay of discovery related only to those

claims they seek to dismiss. And Defendants' aspirations of success on their motion to dismiss do not justify a stay. "[S]peculation does not satisfy Rule 26(c)'s good cause requirement." *Rosario v. Starbucks Corp.*, No. 2:16-cv-01951-RAJ, 2017 WL 4122569, at *1 (W.D. Wash. Sept. 18, 2017) (quoting *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990)); *Old Republic Title, Ltd. v. Kelley*, No. C10-0038-JLR, 2010 WL 4053371, at *4 (W.D. Wash. Oct. 13, 2010). The briefing is not yet complete on Defendants' motion to dismiss, and the Court has not yet determined whether Paieri "will be unable to state a claim for relief." *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (citation omitted) (a court may "stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief."). This factor therefore weighs against a stay.

As for the second factor—whether the motion can be decided without additional discovery—Paieri does not claim to need the responses to the RFPs to respond to the motion to dismiss. *See, e.g., Silbaugh v. Chao*, No. C17-1759-RSM, 2018 WL 2317555, at *1 (W.D. Wash. May 22, 2018) (granting motion to stay discovery when defendant raised an issue regarding subject matter jurisdiction and plaintiff did not claim to need discovery to respond). However, the requested stay would preclude *all* discovery until after the Court rules on Defendants' motion to dismiss. Such a blanket stay of discovery—including discovery into Paieri's individual claim that is not the subject of the motion to dismiss—is overbroad and would unnecessarily delay the litigation. *Edmonds v. Amazon.com, Inc.*, No. C19-1613-JLR, 2020 WL 8996835, at *2 (W.D. Wash. Mar. 6, 2020) (denying a blanket stay of discovery because "[i]f the court allows the case to proceed beyond the motion to dismiss, discovery will be necessary to facilitate the prompt resolution of the case."). This factor is neutral at best.

Defendants also argue that the RFPs are unduly burdensome and if the motion to dismiss is granted, the RFPs will be moot. Dkt. No. 37 at 12. But it does not appear that all of the requests

would be moot. The RFPs seek "recordings of phone calls with Plaintiff" and "[a]ll documents pertaining to Plaintiff's requests for documents and information and Defendants' responses thereto." Dkt. No. 38 at 16. Those requests seem aimed at obtaining documents regarding count VI, which is not a subject of the motion to dismiss. Dkt. No. 36 at 27–28 (count VI alleging that Defendants "failed to produce copies of the plan documents to which Mr. Paieri is entitled"). True enough, the RFPs are expansive, seek documents that span decades, and would impose a significant burden on Defendants and the administration of the Plan. Dkt. No. 38 at 4–16; Dkt. No. 39 at 2–9. But that reality speaks to the parties' need to meet and confer about the RFPs and potential cost-shifting rather than a need for a blanket stay on all discovery. *See generally The Sedona Conference Cooperation Proclamation*, 10 Sedona Conf. J. 331 (2009); *see also Juster Acquisition Co., LLC v. N. Hudson Sewerage Auth.*, No. 12-3427(JLL), 2013 WL 541972, at *3–6 (D.N.J. Feb. 11, 2013); *Couch v. Wan*, No. CV F 08-1621 LJO DLB, 2011 WL 2971118, at *3 (E.D. Cal. July 20, 2011).

### III.   CONCLUSION

For the foregoing reasons, Defendants' motion for a stay of discovery is DENIED. Dkt. No. 37.

Dated this 18th day of December, 2023.

Lauren King
United States District Judge