UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL PAIERI, | CASE NO. 2:23-cv-00922-LK |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANTS' MOTION TO BIFURCATE LIABILITY AND DAMAGES |
| WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST et al., | |
| Defendants. | |

This matter comes before the Court on Defendants' motion to dismiss Plaintiff Michael Paieri's first amended complaint, Dkt. No. 44, and Defendants' motion to bifurcate liability and damages, Dkt. No. 43. For the reasons set forth below, the Court denies Defendants' motion to dismiss and grants Defendants' motion to bifurcate.[1]

## I.   BACKGROUND

Beginning in 1983 and continuing after his official retirement in June 2019, Paieri worked for employers that have agreements with various local chapters of the International Brotherhood

---

[1] Because the matter can be decided based on the parties' filings, the Court denies Defendants' request for oral argument. Dkt. No. 43 at 1; Dkt. No. 44 at 1.

of Teamsters which require them to contribute to the Western Conference of Teamsters Pension Trust (the "Plan"). Dkt. No. 36 at 2–3. The Plan is a multiemployer defined benefit pension plan within the meaning of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and provides retirement benefits to participants and their beneficiaries. *Id.* at 3. Paieri is a participant under the Plan. *Id.* at 2. Defendant Board of Trustees of the Western Conference of Teamsters Pension Trust (the "Board") is the Administrator of the Plan. *Id.* at 3.

Under the Plan, the normal retirement benefit for an unmarried participant is a "Life Only Pension," or "single life annuity" ("SLA"), which provides monthly payments to the participant from the age of 65 through the remainder of the participant's life. *Id.* at 4. For married Plan participants, the Plan offers two surviving spouse forms of pension benefits: a "Regular Employee and Spouse Pension" or "Optional Employee and Spouse Pension." *Id.* at 6. Under ERISA, these are "qualified joint and survivor annuity" or "qualified optional joint and survivor annuity" forms of benefits. *Id.* at 5. If a participant elects this form of benefit, "the participant's monthly benefit is the amount of the Life Only Pension during the participant's lifetime reduced to account for a survivor benefit that the participant's surviving spouse will receive after the participant's death for the rest of the surviving spouse's life." *Id.* at 6. If the participant is married at the time of retirement, the Plan requires the participant's spouse to agree in writing with the participant's selection, including the participant's decision to waive election of a qualified joint and survivor annuity. *Id.* As a prerequisite to such waiver, ERISA requires plans to "disclose to participants and their spouses the relative values of the various forms of benefits[.]" *Id.* at 4 (citing 29 U.S.C. § 1055). In addition, Plan participants who retire before the age of 65 can elect to receive benefits "under an optional form of benefit called a 'Benefit Adjustment Option' [('BAO')] which provides for increased monthly payments before the participant's 'Adjustment Date'": either age 62 or 65. *Id.* at 7–8; *see also id.* at 8 ("If the Participant selects an Adjustment Date of age 62, the participant's

Life Only Pension benefit will be reduced after age 62" by a predetermined monthly amount).

Paieri retired on June 1, 2019 at the age of 56. *Id.* at 3. At the time he retired, he and his spouse declined the Plan's joint and survivor annuity options and instead chose a Life Only Pension with a BAO designating age 62 as the Adjustment Date, as well as a separate life insurance policy to cover his wife in the event she survives him. *Id.* at 8–9.[2] However, Paieri contends that the Plan did not provide him with all the statutorily required information under ERISA—namely, accurate calculations and representations of the relative benefit amounts and values under the various pension benefit options. *Id.* at 7–9. He alleges that if it had, he "may have selected" one of the other options. *See id.* at 9 ("Mr. and Mrs. Paieri declined the Plan's joint and survivor annuity options" based on "the amounts presented to [Mr. Paieri] and the high cost of the Plan's joint and survivor annuity options applied as a reduction to his monthly pension benefits," but "[i]f he had been presented with joint and survivor options that were actuarially equivalent to the Life Only Pension, Mr. Paieri may have selected the Regular Employee and Spouse Pension or the Optional Employee and Spouse Pension instead of electing a Life Only Pension"). He also claims that by failing to provide the requisite information regarding the relative value of the benefit options, the Plan prevented participants like him "from electing the more valuable form of benefit." *Id.*

Furthermore, prior to May 1994, pension benefits could be suspended for Plan participants who retired before the age of 65 and subsequently engaged in post-retirement "covered employment" as defined by the Plan. *Id.* at 9–10. Paieri claims that the Plan was unlawfully amended in May 1994 so that such benefits could be suspended not only for "covered employment," but also for post-retirement employment "in the same industry, same trade or craft and same geographic area covered by the Plan." *Id.* at 10. Relatedly, Paieri alleges that the Plan

---

[2] Paieri alleges that he and his wife "no longer have that life insurance policy." *Id.* at 9.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANTS' MOTION TO BIFURCATE LIABILITY AND DAMAGES - 3

was unlawfully amended again in 2005 so that it could retroactively suspend benefits earned after May 1994 for similar "non-covered" employment. *Id.* at 10–11. As a result, when Paieri worked two post-retirement jobs, Defendants suspended the part of his retirement benefits that had accrued after December 31, 1994, even though the work was not "covered employment." *Id.* at 11–13. Paieri appealed and the Plan paid him some of the benefits withheld during those periods, but did not pay Paieri "the full amount withheld that was attributable to the [BAO]," including his May 2023 pension payment, until after he filed this lawsuit. *Id.* at 12–14. Paieri alleges that the Plan failed to pay him "interest on withheld Benefit Adjustment amounts to account for the delay in payment[.]" *Id.* at 13. Last, Paieri claims that the Plan unlawfully failed to provide him with documents relating to his retirement benefits that he requested in writing in January and February 2023. *Id.* at 13–15.

In June 2023, Paieri initiated this putative class action against the Plan and the Board, seeking declaratory, injunctive, and equitable relief on behalf of himself and three putative classes of Plan participants. Dkt. No. 1; *see* Dkt. No. 36 at 15–16 (defining the classes); *see also id.* at 16–18 (alleging common issues of law and fact). After voluntarily dismissing two of his original claims (Counts V and VII), *see* Dkt. No. 28; Dkt. No. 36 at 27–28, Paieri filed an amended complaint reaffirming his five remaining causes of action, Dkt. No. 36 at 18–28.

Four of Paieri's five causes of action are alleged on behalf of himself and the putative classes:

- **<u>Count I</u>**: Seeking declaratory, injunctive, and equitable relief under 29 U.S.C. § 1132(a)(3) for Defendants' alleged violations of Sections 1053 and 1055 and applicable regulations, based on the following conduct: (1) improperly calculating the Plan's relevant retirement benefit options using "unreasonable and inappropriate actuarial equivalence factors," (2) "failing to disclose the assumptions used to calculate" these retirement benefit options, and (3) "failing to provide relative value disclosures with respect to" the benefit options.

- **Count II**: Seeking declaratory, injunctive, and equitable relief under 29 U.S.C. § 1132(a)(1)(B) for Defendants' alleged violations of Section 1054 and applicable regulations, based on the following conduct: (1) amending the Plan in 1994 and 2005 to reduce accrued benefits, (2) failing to disclose the Plan amendments, and (3) "calculating and paying benefits and determining the right to benefits based on unlawful and/or undisclosed Plan amendments[.]"

- **Count III**: Seeking declaratory, injunctive, and equitable relief for Defendants' alleged violations of 29 U.S.C. §§ 1053 and 1054 and applicable regulations, based on the following conduct: (1) suspending pension benefits under "the 1994 and/or 2005 Amendments," (2) suspending Paieri's benefit increase prior to his Benefit Adjustment Date, and (3) failing to provide Paieri and class members "retroactive benefits with interest to account for the suspension of their [BAO.]"

- **Count IV**: Seeking declaratory, injunctive, and equitable relief for Defendants' alleged breaches of fiduciary duties and violations of 29 U.S.C. § 1104 and applicable regulations, based on the following conduct: (1) failing to provide actuarially equivalent optional forms of retirement benefits, (2) failing to disclose the assumptions used to calculate the relevant retirement benefit options, (3) "failing to give advance notice to participants that the Plan was amended to expand the scope of the suspension of benefits provisions," (4) applying the 1994 and 2005 amendments to "retroactively decrease accrued vested benefits," (5) "suspending and failing to pay interest on the increased benefits prior to the Benefit Adjustment Date" for participants with a BAO, (6) depriving Paieri and class members of "rights protected by ERISA and the terms of the Plan," (7) "failing to administer the claims procedures of the Plan in accordance with ERISA['s] requirements," (8) "failing to administer the Plan in accordance with its terms," and (9) failing to provide Paieri with documents required to be provided to Plan participants.

*Id.* at 18–27.[3] And Paieri's individual cause of action, Count VI, seeks injunctive and monetary relief under 29 U.S.C. § 1132(a)(3) and (c)(1)(B) for Defendants' alleged violations of Section 1024 based on their failure to provide the documents he requested. *Id.* at 27–28.

Following the filing of Paieri's first amended complaint, Defendants moved for a protective order staying discovery, Dkt. No. 37, to bifurcate the case into liability and damages phases, Dkt. No. 43, and to dismiss Paieri's claims on behalf of the putative classes (Counts I through IV), Dkt.

---

[3] For Counts III and IV, Paieri does not specify a section of ERISA's civil enforcement statute, 29 U.S.C. § 1132, under which he is pursuing such claims. *See id.* at 23–27.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANTS' MOTION TO BIFURCATE LIABILITY AND DAMAGES - 5

No. 44. The Court denied Defendants' motion for a protective order. Dkt. No. 58. And notably, the original case schedule in this case, Dkt. No. 29, has been superseded by a case schedule limited to issues of class certification, *see* Dkt. Nos. 73, 75.

## II.   DISCUSSION

The Court has jurisdiction over this matter pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. The Court first addresses Defendants' motion to dismiss before turning to the motion to bifurcate.

### A.   Defendants' Motion to Dismiss

Defendants seek dismissal of Counts I through IV for multiple reasons. First, they argue that Paieri lacks Article III standing to pursue Count I and Count IV—to the extent it is derivative of Count I—and both claims should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). Dkt. No. 44 at 3–4, 12–14, 22–23. Second, they contend that Counts I and IV fail to state a claim for relief and should be dismissed under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 3–5, 14–18. And third, Defendants assert that Counts I through IV are time-barred under the relevant statutes of limitation. *Id.* at 3, 5, 18–22. Defendants do not, however, seek dismissal of Count VI, Paieri's individual claim concerning Defendants' alleged failure to adequately respond to his requests for Plan documents and information. *See generally id.*; Dkt. No. 56 at 8 n.1.

For the reasons set forth below, the Court denies Defendants' motion and concludes that (1) Paieri has standing to bring Count I and the corresponding portions of Count IV, (2) Counts I through IV are not time-barred, and (3) Paieri has plausibly stated a claim for relief in Counts I and IV.

1        1.   <u>Consideration of Materials Outside the Pleadings</u>

As an initial matter, because the parties dispute which documents the Court may review at the dismissal stage, the Court clarifies the scope of the record. Review of a motion to dismiss is "generally limited to the face of the complaint," but a court may consider "materials incorporated into the complaint by reference, and matters of which [it] may take judicial notice." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 875–76 (9th Cir. 2012); *see also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003) (noting that on a 12(b)(1) jurisdictional challenge, a court may also look beyond the complaint and consider extrinsic evidence). Otherwise, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

A document can be considered "incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Ninth Circuit has distilled the inquiry into a three-part test: (1) the complaint must refer to the document; (2) the document must be central to the plaintiff's claim; and (3) the document's authenticity must be undisputed. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *accord Segar v. Allstate Fire & Cas. Ins. Co.*, No. C21-1526-JLR, 2022 WL 102035, at *5 (W.D. Wash. Jan. 11, 2022).

Here, the parties request, both explicitly and implicitly, that the Court consider various documents filed in connection with the pending motion to dismiss. Dkt. No. 44 at 5–6; *see generally* Dkt. Nos. 45, 57. Paieri argues that that the "relative value disclosure statement" Defendants claim to have provided to him, *see* Dkt. No. 45 at 2–3, 148–82, should not be considered at the motion to dismiss stage, and that only the pension plan itself is appropriate to review under the incorporation by reference doctrine, Dkt. No. 56 at 10, 17–18 (citing Dkt. No. 45 at 4–125).

Certainly, the pension plan and trust agreements meet the standard for incorporation by reference into Paieri's amended pleadings, and no party disputes their authenticity. *See, e.g.*, Dkt. No. 36 at 3–4; *Beserra v. Albertsons Cos., Inc.*, No. EDCV-20-573-PSG (SPx), 2020 WL 13348402, at *3 (C.D. Cal. Aug. 19, 2020). Likewise, Paieri's retirement application and benefit election form are incorporated into his pleadings and are central to his claims, and he does not dispute their authenticity. *See* Dkt. No. 36 at 8–9; *see also* Dkt. No. 56 at 17–18. But because Paieri disputes the authenticity of the relative value disclosure statement Defendants attach as Exhibit 7, and Defendants do not explain how this document is incorporated by reference into Paieri's complaint, the Court declines to consider it for the purposes of deciding Defendants' motion to dismiss. *See* Dkt. No. 44 at 4–5; Dkt. No. 56 at 17–18; Dkt. No. 64 at 6–8; *see also generally* Dkt. No. 36. Similarly, Defendants do not state where in his amended pleadings Paieri references the three letters they attach as Exhibits 4, 5, and 6 in support of their motion, and therefore the Court will not consider them either. *See* Dkt. No. 45 at 132–47.[4]

2. Paieri has Standing With Respect to Count I and Related Portions of Count IV

For federal courts to exercise subject matter jurisdiction under Article III of the Constitution, a plaintiff must have standing to sue. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc). Meaning, a plaintiff must "demonstrate (1) that he or she suffered an injury in fact that is concrete,

---

[4] With respect to the website printout Paieri attaches to a declaration in support of his opposition to the motion to dismiss, *see* Dkt. No. 57 at 10–22; Dkt. No. 36 at 14, the Court may take judicial notice of facts "not subject to reasonable dispute." Fed. R. Evid. 201(b)(1)–(2); *Ritchie*, 342 F.3d at 908. Courts in this circuit routinely find that certain websites and their contents may be judicially noticed. *See, e.g.*, *Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 993–94 (W.D. Wash. 2022); *Malheur Forest Fairness Coal. v. Iron Triangle, LLC*, No. 2:22-CV-01396-HZ, 2023 WL 6811871, at *3–4 (D. Or. Oct. 13, 2023); *Arroyo v. AJU Hotel Silicon Valley LLC*, No. 20-CV-08218-JSW, 2021 WL 2350813, at *2 (N.D. Cal. Mar. 16, 2021); *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020). *But see Amazon.com Servs. LLC v. Paradigm Clinical Rsch. Inst., Inc.*, 631 F. Supp. 3d 950, 962 (W.D. Wash. 2022) (declining to take judicial notice of private corporate website describing its own business because such websites "generally are not the sorts of sources whose accuracy cannot reasonably be questioned"); *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1030–31 (C.D. Cal. 2015) (same). Thus, the Court may take judicial notice of Paieri's exhibit, but notes that it does not alter the outcome here.

particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U. S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Moreover, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)); *accord Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). "When evaluating whether the standing elements are present, [the district court] must look at the facts as they exist at the time the complaint was filed." *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1047 (9th Cir. 2014) (cleaned up).

In the absence of Article III standing, a defendant may move to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(1) based on the lack of subject matter jurisdiction. *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023); *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Jurisdictional attacks under Rule 12(b)(1) may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Defendants primarily advance a facial challenge to Paieri's complaint, arguing that Paieri has not alleged an injury in fact by asserting only that he "may have" selected a different benefit option if the Plan had presented him with accurate relative value information. Dkt. No. 44 at 12

1  (emphasis omitted).[5] A district court resolves a facial jurisdictional attack as it would a Rule

2  12(b)(6) motion: by accepting Paieri's allegations as true and drawing all reasonable inferences in

3  his favor, and then determining whether the allegations are sufficient to invoke the Court's

4  jurisdiction. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

5       "A 'concrete' injury must be '*de facto*'; that is, it must actually exist" and be "'real,' and

6  not 'abstract.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016); *accord Arizona v. Yellen*, 34

7  F.4th 841, 848 (9th Cir. 2022). Importantly, the Supreme Court has held that "even in the context

8  of a statutory violation," such as the ERISA violations alleged here, "Article III standing requires

9  a concrete injury" and a plaintiff does not automatically satisfy "the injury-in-fact requirement

10  whenever a statute grants a person a statutory right and purports to authorize that person to sue to

11  vindicate that right." *Thole*, 140 S. Ct. at 1620–21 (quoting *Spokeo*, 578 U.S. at 341); *see also id.*

12  at 1622 ("There is no ERISA exception to Article III."). Thus, for purposes of establishing

13  standing, there is a difference between "a plaintiff's statutory cause of action to sue a defendant

14  over the defendant's violation of federal law, and . . . a plaintiff's suffering concrete harm because

15  of the defendant's violation of federal law." *TransUnion*, 594 U.S. at 426–27. As the Supreme

16  Court recently explained, "Congress may enact legal prohibitions and obligations" and "create

17  causes of action for plaintiffs to sue defendants who violate those legal prohibitions or

18  obligations," but "an injury in law is not an injury in fact," and "[o]nly those plaintiffs who have

19  been concretely harmed by a defendant's statutory violation may sue that private defendant over

20  that violation in federal court." *Id.* at 427. Even for so-called "informational injuries," a plaintiff

21  must allege "downstream consequences" and "adverse effects" flowing from the failure to receive

22

23  [5] Although the Court focuses on this facial challenge, Defendants also appear to advance a factual attack in the sense
    that they argue that the form of benefit that Paieri would receive if he elected one of those alternative options would

24  not exceed the benefit he is receiving now on an actuarial basis. *Id.* However, neither side's briefing addresses this
    argument, which Defendants raise only in passing.

required information. *Id.* at 442; *cf. Munoz v. PHH Corp.*, No. 22-15407, 2023 WL 2202228, at *1 (9th Cir. Feb. 24, 2023).

In this case, the Court finds that Paieri has alleged an injury in fact for Count I as well as the corresponding portions of Count IV. Beyond alleging that he "may have selected" a different pension plan in 2019, Paieri claims that "[t]he Plan's failure to provide actuarially equivalent spousal benefits constitutes a forfeiture of non-forfeitable benefits." Dkt. No. 36 at 9. Specifically, Paieri asserts that "by failing to fully disclose the relative value of those forms of benefits," the Plan prevented him and other participants "from electing the more valuable form of benefit." *Id.* at 9; *see also id.* at 19. Paieri further asserts that disclosure of the relative values of the various forms of benefits is "a prerequisite to any waiver by a plan participant and spouse of their rights to a joint and survivor annuity," and because Paieri did not receive such disclosure, he is entitled to relief requiring the Plan to "recalculate and provide [him] the right to reelect optional forms of benefits, and to pay such redetermined and reelected benefits retroactively to the date of retirement with interest[.]" *Id.* at 4, 19. While it is true that Paieri does not allege, for example, that he is receiving reduced monthly benefits because the Plan failed to comply with ERISA's requirements, *see, e.g.*, *Belknap v. Partners Healthcare Sys., Inc.*, 588 F. Supp. 3d 161, 168 (D. Mass. 2022); *Smith v. Rockwell Automation, Inc.*, No. 19-C-0505, 2020 WL 7714663, at *2 (E.D. Wis. Dec. 29, 2020), "it is enough to plead that the harm occurred," *Bryant v. Walgreen Co.*, No. 23-CV-1294, 2023 WL 5580415, at *2 (N.D. Ill. Aug. 29, 2023); *see also Lundstrom v. Young*, No. 18-CV-2856-GPC, 2022 WL 15524624, at *16 (S.D. Cal. Oct. 27, 2022) (finding standing where plaintiff alleged that because defendant failed to provide information required under ERISA, he could not adequately "evaluate his options"). The Court finds that Paieri's allegations that he picked the pension option he did "[b]ased on the amounts presented to him and the high cost of" the Plan's other joint and survivor annuity options, and that the Plan's failure to disclose information did not

satisfy the prerequisite to waiver and prevented "participants from electing the more valuable form of benefit," Dkt. No. 36 at 4, 9, are sufficient to allege a cognizable informational injury, *see, e.g.*, *Lundstrom*, 2022 WL 15524624, at *16; *Bryant*, 2023 WL 5580415, at *2.[6]

And, to the extent Count IV alleges a claim for breach of fiduciary duty on these same factual bases, the Court finds that Paieri also has standing to assert those portions of his claim. *Cf. Wit v. United Behav. Health*, 79 F.4th 1068, 1082–83 (9th Cir. 2023).

### 3.  Paieri's Claims Are Not Time-Barred

Next, Defendants argue that Paieri's claims are time-barred because the applicable limitations periods—extending at most three years—have expired. Dkt. No. 44 at 18–22.

ERISA provides a limitations period for claims for breach of fiduciary duty like Count IV. *See* 29 U.S.C. § 1113. Section 1113 states:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

---

[6] Defendants acknowledge that plans can meet the disclosure requirement by including information that shows "the financial effect and relative value of optional forms of benefit in a series of examples specifying the amount of the optional form of benefit payable to a hypothetical participant at a representative range of ages and the comparison of relative values at those same representative ages." Dkt. No. 64 at 7 (quoting 26 C.F.R. § 1.417(a)(3)-1(d)(2)). Although Defendants insist that this "is precisely what the Plan's relative value disclosure did here," *id.*, that is a factual dispute the Court cannot entertain at this juncture. It is clear from Paieri's operative complaint that, under his theory, the comparison of relative values was incorrect and unreliable because it assumed earlier mortality rates than current data (and reasonable actuarial assumptions) would support. *See, e.g.*, Dkt. No. 36 at 2, 9, 16–17, 19, 26.

1    *Id.* Thus, claims for breach of fiduciary duty "must be filed within one of three time periods, each

2    with different triggering events." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 774

3    (2020). The first period begins when the breach occurs and lasts six years. *Id.* "The second period,

4    which accelerates the filing deadline, begins when the plaintiff gains 'actual knowledge' of the

5    breach" and lasts three years. *Id.* And the third period begins when the plaintiff discovers the

6    alleged breach in cases of fraud or concealment, and lasts six years. *Id.* With respect to the

7    accelerated three-year filing deadline, upon which Defendants rely, "the plaintiff must in fact have

8    become aware of that information" in order "[t]o meet § 1113(2)'s 'actual knowledge'

9    requirement[.]" *Id.* at 777.

10         For other claims under ERISA, courts employ "the most analogous statute of limitation

11    under state law" because ERISA's civil enforcement statute, 29 U.S.C. § 1132, "does not provide

12    its own statute of limitation." *Stone v. Travelers Corp.*, 58 F.3d 434, 438 (9th Cir. 1995); *see also*

13    *N. Cal. Retail Clerks Unions & Food Emps. Joint Pension Tr. Fund v. Jumbo Mkts., Inc.*, 906 F.2d

14    1371, 1372 (9th Cir. 1990). An action under Section 1132 accrues "when the plaintiff knows or

15    has reason to know of the injury that is the basis of the action." *Jumbo Mkts.*, 906 F.2d at 1372.

16         Defendants argue that because ERISA does not provide a statute of limitations with respect

17    to Paieri's claims brought pursuant to 29 U.S.C. § 1132(a)(3), the Court must apply the analogous

18    state law limitations period. Dkt. No. 44 at 18; Dkt. No. 64 at 11. According to Defendants, the

19    applicable statute of limitations period for these claimed statutory violations under state law is the

20    two-year "catch-all" provision in Section 4.16.130 of the Revised Code of Washington, Dkt. No.

21    44 at 18–19; Dkt. No. 64 at 13, or alternatively, the three-year statute of limitations under Section

22    4.16.115 of the Revised Code of Washington, Dkt. No. 44 at 21; Dkt. No. 64 at 13. Defendants

23    contend that Paieri "had knowledge of the facts underlying his claims more than [three] years

24    before he filed this lawsuit," rendering Counts I through III time-barred. Dkt. No. 44 at 19–21;

Dkt. No. 64 at 13. For the same reason, Defendants maintain that Paieri's claim for breach of fiduciary duty in Count IV is time-barred under the three-year limitations period provided by 29 U.S.C. § 1113(2). Dkt. No. 44 at 21–22; Dkt. No. 64 at 14–15. Paieri counters that his causes of action are timely under Washington's six-year statute of limitations for contract claims, Dkt. No. 56 at 19 (citing Wash. Rev. Code § 4.16.040); *see id.* at 21–22, and that his claims did not accrue under federal law until an unspecified time after his retirement, *id.* at 19–21.

Beginning with Counts II and III, the Court agrees with Paieri that the most analogous Washington statute of limitations is Section 4.16.040 for breach of written contracts. Both of these claims relate to Defendants' "calculating and paying benefits" based on the allegedly unlawful 1994 and 2005 Plan amendments. Dkt. No. 36 at 22–23 (Count II, citing 29 U.S.C. § 1132(a)(1)(B)); *see id.* at 24 (Count III, claiming that Defendants wrongfully suspended benefits and failed to pay retroactive benefits with interest).[7] Although Defendants seek to paint these claims as solely "statutory claims," the Ninth Circuit has found that claims seeking to recover benefits under an ERISA plan are most analogous to a breach of contract claim, and thus Washington's six-year limitations period applies. *See Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1187 & n.2 (9th Cir. 2010); *Flanagan v. Inland Empire Elec. Workers Pension Plan & Tr.*, 3 F.3d 1246, 1252 (9th Cir. 1993); *see also Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*, 222 F.3d 643, 648 (9th Cir. 2000); *Beserra*, 2020 WL 13348402, at *7; *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, No. CV-14-03053-MWF (VBKx), 2015 WL 12778355, at *11 (C.D. Cal. Oct. 23, 2015). Furthermore, Paieri alleges that no notice of the allegedly unlawful amendments was provided to him pursuant to 29 U.S.C. § 1054(h), Dkt. No. 36 at 10–11, but otherwise does not state when he became aware of the alleged

---

[7] The Court notes that under the Plan, "[i]f any provision of the Plan is held invalid, the validity of the balance of the Plan will not be affected." Dkt. No. 45 at 53.

violations, making it unclear at best whether any statute of limitations began running more than six years prior to his lawsuit.

Similarly, for Counts I and IV, the Court cannot conclusively say when Paieri in fact became aware or had reason to become aware of the statutory violations and breaches of fiduciary duty he alleges in his operative pleading. Defendants argue that Paieri "had 'actual knowledge' of the facts underlying Counts I–III more than three years before he filed this lawsuit, which renders Count IV time-barred under 29 U.S.C. § 1113(2)." Dkt. No. 44 at 22 (citing Dkt. No. 36 at 7–8, 10); *see also* Dkt. No. 64 at 14–15. But the allegations in the first amended complaint do not reflect such a definitive timeline, and this inquiry presents a question of fact. For example, although Paieri retired in June 2019, it is not clear based on the current record at what point he became aware of the deficiencies he alleges relating to Defendants' plan disclosures. *See, e.g.*, *Masten v. Metro. Life Ins. Co.*, 543 F. Supp. 3d 25, 37–38 (S.D.N.Y. 2021). In addition, with respect to his breach of fiduciary duty claim, Paieri alleges he received his first payment with suspended benefits on August 23, 2019, Dkt. No. 36 at 12, but also that the Plan did not pay him the full amount to which he was entitled in February 2021, *id.*, and that the Plan notified him in December 2022 that his benefits would again be suspended, *id.* at 13. Moreover, part of Paieri's breach of fiduciary duty claim relates to the Plan's alleged "failure to provide for interest on withheld Benefit Adjustment amounts," the timing of which is unclear. *Id.* at 13, 26. Discovery may well show that part or all of Paieri's breach of fiduciary duty claim arising from Defendants' failure to disclose information is time-barred under 29 U.S.C. § 1113(2), but plaintiffs are generally not required to "plead around affirmative defenses" such as statutes of limitations, *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019). Accordingly, "[d]ismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious

1   bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765

2   F.3d 999, 1004 (9th Cir. 2014). Here, Defendants have not satisfied this standard.[8]

3        Therefore, at this stage of litigation, the Court does not find that Counts I through IV are

4   time-barred.

5        4.   <u>Defendants' Request to Dismiss Counts I and IV For Failure to State a Claim is Denied</u>

6        Defendants seek dismissal of Counts I and IV pursuant to Federal Rule of Civil Procedure

7   12(b)(6). They argue that Count I and the corresponding portions of Count IV fail to state a claim

8   for relief because (1) ERISA does not impose a "reasonableness" standard on the actuarial

9   equivalence factors plans must utilize, and (2) Paieri does not specify what alternative factors the

10  Plan should have used or what was wrong with the existing factors. Dkt. No. 44 at 14–18.

11  Furthermore, with respect to Count IV, Defendants contend that the Plan cannot be liable for a

12  fiduciary breach because it cannot be a fiduciary, and that Paieri's allegations concern only "settlor

13  functions" which do not provide a basis for fiduciary liability. *Id.* at 22–23. In opposition to these

14  arguments, Paieri (1) states that ERISA and its implementing regulations require accurate and

15  reasonable actuarial assumptions, and (2) disputes Defendants' contention that he must "identify

16  the precise assumptions that should be used to remedy Defendants' deficient actuarial equivalency

17  assumptions in order to assert plausible claims." Dkt. No. 56 at 14–19. He also asserts that

18  Defendants' reference to "settlor functions" in moving to dismiss his breach of fiduciary duty

19  claim is a "red herring," and highlights the fiduciary conduct and breaches outlined in his operative

20

---

21  [8] Defendants submitted a notice of supplemental Authority including two out-of-district cases, Dkt. No. 76, one of which, like *Masten*, applied the three-year statute of limitations period under 29 U.S.C. § 1113(2) to an ostensibly

22  similar breach of fiduciary duty claim: *Knight v. Int'l Bus. Machines Corp.*, No. 22-CV-4592 (NSR), 2024 WL 1466817, at *1 (S.D.N.Y. Apr. 4, 2024). In *Knight*, the court found that "the alleged fiduciary breach occurred with the selection of the outdated mortality tables as conversion factors, or the conversion of [plaintiff's] retirement benefits

23  with those tables," and "Plaintiff therefore had actual knowledge of the breach when he 'received his first payment under the plan[.]'" *Id.* at *4 (quoting *Masten*, 543 F. Supp. 3d at 38). However, in this case, unlike in *Knight* and *Masten*, the allegations underlying Paieri's breach of fiduciary duty claim are broad-based, and it is not clear to the

24  Court that Paieri's claim necessarily accrued when he received his first pension payment in August 2019.

complaint. *Id.* at 24–25 (citing Dkt. No. 36 at 17, 25–26); *see also id.* at 27 ("[T]his Plan requires amendments to be adopted in a fiduciary capacity making the settlor and fiduciary discussion irrelevant." (citing Dkt. No. 45 at 55)). Paieri further argues that the Plan is named as a defendant "as a way to accord complete relief for the fiduciary breach claims" and that dismissal of such claims would be "premature prior to rulings on the relief to be accorded." *Id.* at 28.

### (a) Legal Standard

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). At this stage, the Court accepts as true all factual allegations in the complaint and construes them in the light most favorable to the nonmoving party. *Shooter v. Arizona*, 4 F.4th 955, 957 (9th Cir. 2021). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Such statement must be "short and plain." Fed. R. Civ. P. 8(a)(2). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "detailed factual allegations" are not required, a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) (conclusory allegations of law and unwarranted inferences will not survive a motion to dismiss).

*(b) Count I States a Plausible Claim for Relief*

As noted above, Defendants argue that Paieri "presupposes that ERISA imposes a 'reasonableness' requirement" when it does not, and that in any event, he "alleges no facts whatsoever to suggest that the Plan's interest rate factor is in any way 'unreasonable' or inappropriate." Dkt. No. 44 at 15, 17; *see also* Dkt. No. 64 at 8–10. In his complaint, Paieri alleges that the Plan does not indicate how it selects the factors for calculating the reductions to a Life Only Pension plan if a participant chooses a joint and survivor annuity form of benefit. Dkt. No. 36 at 6–7. He claims, upon information and belief, that the factors the Plan uses "are based on outdated and unreasonable mortality tables that do not reflect current mortality assumptions and improvements in mortality" and "result in benefits that are significantly less than the actuarial equivalent of the life annuity." *Id.* at 7; *see also id.* ("Although ERISA requires that the Plan's joint and survivor annuity forms of benefits . . . be actuarially equivalent to the single annuity form of benefit, the Plan's factors result in joint and survivor annuity benefits that are less than the actuarial equivalent of the Life Only Pension when using reasonable . . . assumptions."). In addition, Paieri maintains that he "never received any disclosure of the relative value of the benefit forms he was entitled to elect at retirement in accordance with applicable regulations under . . . 29 U.S.C. § 1055," and that consequently, he was prevented from properly evaluating his pension options and electing a more valuable plan. *Id.* at 9.

Defendants are correct that ERISA does not expressly include a "reasonableness requirement," and at least two district courts have found that because ERISA does not define "actuarial equivalence" or provide that the calculation of actuarial equivalence requires the use of "reasonable" assumptions, an ERISA violation does not necessarily occur when a plan requires the use of particular actuarial assumptions and then calculates benefit options according to those assumptions. Dkt. No. 44 at 15 (citing *Belknap*, 588 F. Supp. 3d at 166–67, 175–77 (granting

defendant's motion for summary judgment on plaintiff's claims that the alleged "methodology for calculating the value of non-SLAs violates three provisions in ERISA: 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055")); Dkt. No. 76-1 at 3–6 (notice of supplemental authority including *Reichert v. Bakery, Confectionary, Tobacco Workers and Grain Millers Pension Comm.*, No. 2:23-cv-12343 (E.D. Mich. April 17, 2024)); *see also* 29 U.S.C. § 1055(d). However, several other district courts have found "reasonableness in actuarial-equivalence calculations" to be "more consistent with ERISA's purpose," and denied motions to dismiss where the plaintiffs alleged that defendants used factors "unmoored from prevailing discount rates and mortality tables." *Adams v. U.S. Bancorp*, 635 F. Supp. 3d 742, 754 (D. Minn. 2022); *see also Franklin v. Duke Univ.*, No. 1:23-CV-833, 2024 WL 1740479, at *2–3 (M.D.N.C. Apr. 23, 2024);[9] *Smith v. Rockwell Automation, Inc.*, 438 F. Supp. 3d 912, 924 (E.D. Wis. 2020); *Urlaub v. CITGO Petrol. Corp.*, No. 21-C4133, 2022 WL 523129, at *6–7 (N.D. Ill. Feb. 22, 2022); *Masten*, 543 F. Supp. 3d at 33–36; 26 C.F.R. § 1.417(a)(3)-1.

The Court agrees with *Urlaub* that the plain meaning of "actuarial equivalence" requires reasonable actuarial assumptions:

> To be equivalent means to be "equal in force, amount, or value." *Equivalent*, Merriam-Webster, https://www.merriam-webster.com/dictionary/equivalent (last visited February 9, 2022). Only accurate and reasonable actuarial assumptions can convert benefits from one form to another in a way that results in equal value between the two.

*Urlaub*, 2022 WL 523129, at *6. Furthermore, although "ERISA likely does not require that plans use any specific mortality table or any specific interest rate at any given time," it does require that plans "ensure that any optional annuity forms are actuarially equivalent to a single life annuity" by "us[ing] the kind of actuarial assumptions that a reasonable actuary would use at the time of

---

[9] The Court notes that Paieri submitted *Franklin* in a notice of supplemental authority pursuant to Local Civil Rule 7(n). *See* Dkt. Nos. 77, 77-1.

the benefit determination." *Smith*, 438 F. Supp. 3d at 921; *see also Esden v. Bank of Bos.*, 229 F.3d 154, 164 (2d Cir. 2000) ("If plans were free to determine their own assumptions and methodology, they could effectively eviscerate the protections provided by ERISA's requirement of 'actuarial equivalence.'").

Thus, Paieri's allegations that the Plan uses "mortality tables that do not reflect current mortality assumptions and improvements in mortality" and "result in joint and survivor annuity benefits that are less than the actuarial equivalent of the Life Only Pension when using reasonable . . . assumptions" are sufficient to state a claim for violation of 29 U.S.C. §§ 1053 and 1055 based on Defendants' purported failure to disclose qualified joint and survivor annuities options which were the actuarial equivalents of a single annuity for the life of the participant. Dkt. No. 36 at 7, 9; *cf. Bafford v. Admin. Comm. of Northrop Grumman Pension Plan*, 101 F.4th 641, 656 (9th Cir. 2024) ("[A] participant who receives a significantly inaccurate statement may be affirmatively misled into believing that their pension will be greater than it is and make inadvisable decisions as a result.");[10] *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1110 (9th Cir. 2000) ("The practical effect of either understating or overstating a mortality assumption is to treat each plan participant as either surviving longer or dying earlier than should actuarially be expected. Changing the life expectancy of a plan participant, of course, can increase or decrease the amount of actuarially equivalent benefits to which he or she is entitled."). Accordingly, the Court denies Defendants' request to dismiss Count I and any derivative portion of Count IV.

### (c)  Count IV States a Plausible Claim for Relief

ERISA "imposes the following duties on plan fiduciaries: the duty of loyalty, the duty of prudence, the duty to diversify the investments, and the duty to act in accordance with the

---

[10] The Court notes that Paieri submitted *Bafford* in a notice of supplemental authority pursuant to Local Civil Rule 7(n). *See* Dkt. Nos. 78, 78-1.

documents and instruments governing the plan." *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1069 (N.D. Cal. 2017) (citing 29 U.S.C. § 1104(a)(1)). To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that (1) the defendant was a fiduciary; (2) the defendant breached a fiduciary duty; and (3) the plaintiff suffered damages. *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1026 (9th Cir. 2021) (citing 29 U.S.C. § 1109(a); *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004)).[11]

Paieri alleges, and Defendants do not dispute, that the Board "is the Administrator of the Plan and a fiduciary with respect to the Plan within the meaning of ERISA[.]" Dkt. No. 36 at 3; *see also* 29 U.S.C. § 1002(21); Dkt. No. 45 at 50.[12] And the Court has already found that Paieri has adequately pleaded redressable injury. Defendants' principal remaining argument is that the Board is not a proper defendant because "[t]he conduct on which Count IV is based arises in the context of settlor functions that do not give rise to fiduciary liability." Dkt. No. 44 at 23; *see id.* ("[A]ll of the conduct upon which Count IV is based involves settlor functions (adopting the 1994 and 2005 amendments) or simply operating the Plan according to its terms (actuarial factors and benefit suspensions), which cannot give rise to fiduciary liability."). In other words, Defendants argue that the Board was not acting in a fiduciary capacity when it engaged in the complained-of conduct.

---

[11] As noted *supra* note **Error! Bookmark not defined.**, Paieri does not specify whether he brings his breach of fiduciary duty claim pursuant to 29 U.S.C. §§ 1132(a)(2) or (a)(3). *See* Dkt. No. 36 at 25–27. However, because he does not appear to be seeking relief on behalf of the Plan for losses to the Plan, the Court presumes he is seeking relief under Section 1132(a)(3). *See, e.g.*, *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1075 (9th Cir. 2009) ("Unlike 29 U.S.C. § 1132(a)(2), which requires that relief sought must be on behalf of the entire plan, the Supreme Court has held that a participant or beneficiary has standing pursuant to section 1132(a)(3) to seek individual recovery in the form of 'appropriate equitable relief.'" (citing *Varity Corp. v. Howe*, 516 U.S. 489, 509–10 (1996))); *see also LD v. United Behav. Health*, 508 F. Supp. 3d 583, 597 (N.D. Cal. 2020); *Cromwell v. Kaiser Found. Health Plan*, No. 18-CV-06187-EMC, 2019 WL 1493337, at *5 (N.D. Cal. Apr. 4, 2019).

[12] At this phase of litigation, the Court declines to reach Defendants' argument that the Plan is not a proper defendant for Paieri's breach of fiduciary duty claims. *See* Dkt. No. 44 at 22. Even if the Court were to find in their favor in that respect, doing so would not provide a basis to dismiss either the Plan or Count IV in their entireties.

Fiduciary responsibilities under ERISA are defined in terms of the exercise of discretionary control over the management or administration of the plan or its assets. 29 U.S.C. § 1002(21)(A). "[D]ecisions regarding the form or structure of a plan," on the other hand, "are generally settlor functions." *Beck v. PACE Int'l Union*, 551 U.S. 96, 101–02 (2007) (cleaned up); *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) ("In general, an employer's decision to amend a pension plan concerns the composition or design of the plan itself and does not implicate the employer's fiduciary duties which consist of such actions as the administration of the plan's assets."). However, "the implementation of decisions concerning plan design can be subject to ERISA fiduciary duty." *Asner v. SAG-AFTRA Health Fund*, 557 F. Supp. 3d 1018, 1033 (C.D. Cal. 2021) (citing *Waller v. Blue Cross of Cal.*, 32 F.3d 1337, 1342 (9th Cir. 1994)).

In his first amended complaint, Paieri alleges that:

> by failing to provide actuarially equivalent joint and survivor optional forms of benefits, by failing to disclose the assumptions used to calculate the joint and survivor optional forms of benefits, by failing to provide relative value disclosures of the joint and survivor optional forms of benefits, by failing to give advance notice to participants that the Plan was amended to expand the scope of the suspension of benefits provisions, by applying suspension of benefits amendments to retroactively decrease accrued vested benefits, by suspending and failing to pay interest on the increased benefits prior to the Benefit Adjustment Date for participants who have a Benefit Adjustment option, by depriving Plaintiff and class members of rights protected by ERISA and the terms of the Plan, by failing to administer the claims procedures of the Plan in accordance with ERISA requirements, by failing to administer the Plan in accordance with its terms, and by failing to provide Plaintiff with documents and instruments required to be provided to Plan participants, Defendant fiduciaries breached their fiduciary duties to Plaintiff and class members.

Dkt. No. 36 at 25–26; *see id.* at 7–9, 11–15. Thus, although Paieri takes issue with the 1994 and 2005 amendments to the Plan, *see id.* at 10–11, his breach of fiduciary duty claim goes well beyond the Board's decision to amend the Plan or mere disputes as to its design, Dkt. No. 56 at 26–27; *see also, e.g.*, *Foster v. Adams & Assocs., Inc.*, No. 18-CV-02723-JSC, 2020 WL 3639648, at *4 (N.D. Cal. July 6, 2020) ("As a general rule, '[t]he duty of loyalty is one of the common law trust

1    principles that apply to ERISA fiduciaries, and it encompasses a duty to disclose.'" (quoting

2    *Washington v. Bert Bell/Pete Rozelle NFL Ret. Plan*, 504 F.3d 818, 823 (9th Cir. 2007)).

3         Accordingly, the Court denies Defendants' motion to dismiss Count IV on the basis that

4    the alleged fiduciary conduct consisted only of settlor conduct. *See, e.g.*, *Rockwell Automation*,

5    438 F. Supp. 3d at 925 (allowing "redundant" but "not implausible" breach of fiduciary claim to

6    proceed under Section 1132(a)(3)); *cf. Franklin*, 2024 WL 1740479, at *4–5.

7    **B.    Motion to Bifurcate**

8         Separately, Defendants urge the Court to bifurcate discovery into two phases: liability and

9    damages. Dkt. No. 43 at 3, 5. The parties completed briefing on this motion prior to the Court's

10   December 18, 2023 Order denying Defendants' request for a protective order staying discovery,

11   Dkt. No. 58, and before the Court struck the existing trial date and entered a modified case schedule

12   geared toward class certification, Dkt. Nos. 71–73. Therefore, some of Defendants' concerns

13   presented in their motion to bifurcate may have been addressed already. Nevertheless, the Court

14   independently grants Defendants' request to bifurcate as set forth below.

15        1.    Legal Standard

16        Federal Rule of Civil Procedure 42(b) provides district courts with the authority to phase

17   or bifurcate proceedings. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th

18   Cir. 2004). The Rule states, in relevant part, that "[f]or convenience, to avoid prejudice, or to

19   expedite and economize, the court may order a separate trial of one or more separate issues[.]"

20   Fed. R. Civ. P. 42(b). In determining whether bifurcation is appropriate, courts weigh several

21   factors, including convenience, prejudice, and judicial economy. *United States v. Boeing Co.*, No.

22   C22-0485-JLR, 2023 WL 5836487, at *2 (W.D. Wash. Aug. 31, 2023), *opinion clarified*, No. C22-

23   0485-JLR, 2023 WL 6609359 (W.D. Wash. Sept. 14, 2023). The party seeking bifurcation bears

24   "the burden of proving that bifurcation is justified given the facts in [the] case." *Spectra–Physics*

*Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 102 (N.D. Cal. 1992). Bifurcation is particularly appropriate when resolution of a single claim or issue could be dispositive of the entire case. *Karpenski v. Am. Gen. Life Cos., LLC*, 916 F. Supp. 2d 1188, 1190 (W.D. Wash. 2012); *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961 (9th Cir. 2001); *see also Jelinek v. Am. Nat'l Prop. & Cas. Co.*, No. C15-779-RAJ, 2016 WL 5795277, at \*1 (W.D. Wash. May 23, 2016) ("Bifurcation is appropriate when it simplifies the issues for the jury and avoids the danger of unnecessary jury confusion."). In addition, district courts have "broad powers of case management, including the power to limit discovery to relevant subject matter and to adjust discovery as appropriate to each phase of litigation." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803–04 (Fed. Cir. 1999); *see also Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) ("The district court has wide discretion in controlling discovery.").

## 2. Phasing Discovery is Warranted

In support of their proposed bifurcation, Defendants contend that: (1) the legal and factual issues pertaining to liability and damages are distinct and separable; (2) bifurcation will advance the interests of convenience and judicial economy and cause no prejudice to either party; and (3) Defendants have been diligent in bringing these issues to the Court's and Paieri's attention. Dkt. No. 43 at 3, 5, 11–14; Dkt. No. 55 at 3–4, 6–8. As they previously set forth in their motion for a protective order staying discovery, Defendants maintain that "[i]dentifying participants in each of Plaintiff's three putative classes, and then collecting documents responsive to [his discovery] Requests, will be an extraordinarily time-consuming and cumbersome process involving a largely manual retrieval of millions of pages of documents." Dkt. No. 43 at 7; *see* Dkt. No. 37 at 7.[13] Thus, Defendants seek a discovery process "conducted in phases[.]" Dkt. No. 55 at

---

[13] Defendants distinguish their motion for a protective order as being "limited to the more short-term issue of preventing unnecessary discovery during the pleadings stage." Dkt. No. 43 at 4 n.1.

4. Paieri, on the other hand, faults Defendants for failing to properly meet and confer in good faith in order to narrow the discovery process and alleviate their concerns, and contends that Defendants have failed to demonstrate that bifurcation is warranted in this case. Dkt. No. 53 at 6–15.

The Court finds that phasing discovery so as to preserve resources and promote efficiency for the parties and the Court is warranted. *See, e.g.*, *Jelinek*, 2016 WL 5795277, at *1 (entering a "modified form of bifurcation" to "expedit[e] the proceedings"). Specifically, the Court agrees with Defendants that the issues of liability and damages can be bifurcated. Given the current posture of the case, the Court orders the parties to meet and confer and file a Joint Status Report within 21 days of the date of this Order setting forth a proposed modified scheduling order. If the parties cannot agree, the Court will impose a schedule.

### III.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED, Dkt. No. 44, and Defendants' motion to bifurcate is GRANTED, Dkt. No. 43. Within 21 days of the date of this Order, the parties must meet and confer and submit a Joint Status Report regarding discovery as outlined above.

Dated this 21st day of June, 2024.

Lauren King
United States District Judge